D. 673 Color Photographs 1 – 34 of machinery
D. 674 Depiction of facility space and storage space needed
D. 675 Timeline showing dates and locations of storage of main sheaves
D. 676 3/9/94 memos re Steward Bid
D. 677 3/16/94 White Oak Vendor or Subcontractor Verbal Quotation
D. 678 6/6/94 payment bond issued by National Union Fire
D. 679 8/4/94 Purchase Order Contract between Steward and White Oak
D. 680 7/11/96 Letter from AIG to Steward
D. 681 8/1/96 Letter from AIG to Steward
D. 682 1/2/97 Letter from AIG to Steward
D. 683 12/20/97 Notice of Claim
D. 684 8/11/00 Letter from Cianbro to AIG
D. 685 4/28/00 Assignment of Contract and Agreement between and among DOT, White Oak, National Union and Cianbro
D. 686 8/23/00 payment from AIG to Steward of $254,357.25
D. 687 8/23/00 payment from AIG to Steward of $750,000.00
D. 688 8/23/00 payment from AIG to Steward of $153,814.25
D. 689 9/7/00 payment from AIG to Steward of $153,814.25
D. 690 10/19/00 payment from AIG to Steward of $153,814.25
D. 691 11/30/00 payment from AIG to Steward of $153,814.25
D. 692 1/11/01 payment from AIG to Steward of $ 100,000
D. 693 10/14/00 letter from Cianbro to AIG
D. 694 2/28/02 Affidavit of Whitney Debardeleben
D. 695 Expert Witness Report of Frank Zito, October 24, 2003, with supporting tables and exhibits
D. 696 State of Connecticut DOT Payment Estimates Nos. 1 – 86
D. 697 Interest Charges calculations prepared by Steward, on the following dates: 9/30/99, 6/1/00, 8/7/00, 9/15/03.
D. 698 Steward Auditor's notes for the year ending December 31, 1997, 1998 and 1999
D. 699 Zito Analysis of Schedule A
D. 700 Zito Analysis of Assumed Late Payments
D. 701 11/16/96 letter to White Oak from Steward
D. 702 12/12/96 letter to White Oak from Steward
D. 703 List of Contacts for storage in Alabama
D. 704 Job Detail History Report, Storage and Interest
D. 705 6/14/99 letter from Steward to White Oak
D. 706 Auditor's notes for the year end December 31, 1999
D. 707 11/27/97 letter from Steward to ADL
D. 708 4/23/97 letter from Steward to ADL
D. 709 8/26/97 letter from Steward to ADL
D. D710 7/29/98 letter from Steward to Qualico
D. 711 Analysis of Selected Jobs from Study of Lost Efficiency
D. 712 Summary of Adjustments to the alleged loss sustained
D. 713 Analysis Excluding Projects After November, 1999

D. 714 Labor Hour Analysis of Steward Job Cost Report
D. 715 10/14/95 EL Conwell Report
D. 716 10/21/95 EL Conwell Report
D. 717 10/28/95 EL Conwell Report
D. 718 11/4/95 EL Conwell Report
D. 719 11/11/95 EL Conwell Report
D. 720 11/18/95 EL Conwell Report
D. 721 11/25/95 EL Conwell Report
D. 722 12/2/95 EL Conwell Report
D. 723 12/9/95 EL Conwell Report
D. 724 12/16/95 EL Conwell Report
D. 725 12/23/95 EL Conwell Report
D. 726 12/30/95 EL Conwell Report
D. 727 1/6/96 EL Conwell Report
D. 728 1/13/96 EL Conwell Report
D. 729 1/20/96 EL Conwell Report
D. 730 1/27/96 EL Conwell Report
D. 731 2/3/96 EL Conwell Report
D. 732 2/10/96 EL Conwell Report
D. 733 2/17/96 EL Conwell Report
D. 734 2/8/96 Letter from Steward to White Oak re proposed repair for counterweight rope connections
D. 735 2/24/96 EL Conwell Report
D. 736 3/2/96 EL Conwell Report
D. 737 2/22/96 Letter from Steward to White Oak re defect discovered during welding and proposed fix
D. 738 2/21/96 Letter from Steward to White Oak re submittal for repair procedure on sheave no. 6
D. 739 3/9/96 EL Conwell Report
D. 740 3/16/96 EL Conwell Report
D. 741 3/23/96 EL Conwell Report
D. 742 3/30/96 EL Conwell Report
D. 743 3/30/96 EL Conwell Report
D. 744 4/13/96 EL Conwell Report
D. 745 4/20/96 EL Conwell Report
D. 746 4/27/96 EL Conwell Report
D. 747 5/4/96 EL Conwell Report
D. 748 5/11/96 EL Conwell Report
D. 748A 5/18/96 EL Conwell Report
D. 749 5/25/96 EL Conwell Report
D. 750 6/1/96 EL Conwell Report
D. 751 6/8/96 EL Conwell Report
D. 752 6/15/96 EL Conwell Report

WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. *Counselors At Law*
99 Pratt Street, Hartford, Connecticut 06103 *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

D. 753 6/22/96 EL Conwell Report
D. 754 6/29/96 EL Conwell Report
D. 755 7/6/96 EL Conwell Report
D. 756 7/13/96 EL Conwell Report
D. 757 7/20/96 EL Conwell Report
D. 758 7/27/96 EL Conwell Report
D. 759 8/3/96 EL Conwell Report
D. 760 8/10/96 EL Conwell Report
D. 761 8/17/96 EL Conwell Report
D. 762 8/24/96 EL Conwell Report
D. 763 8/31/96 EL Conwell Report
D. 764 9/7/96 EL Conwell Report
D. 765 9/14/96 EL Conwell Report
D. 766 9/21/96 EL Conwell Report
D. 767 9/12/96 Letter from Steward to White Oak
D. 768 10/5/96 EL Conwell Report
D. 769 10/12/96 EL Conwell Report
D. 770 10/19/96 EL Conwell Report
D. 771 10/26/96 EL Conwell Report
D. 772 11/2/96 EL Conwell Report

(b) Documents which may be offered

11.  ANTICIPATED EVIDENTIARY PROBLEMS/MOTIONS IN LIMINE

The Defendant National Union has filed or will be filing a Motion in Limine to preclude any testimony by the Plaintiff's Expert, Les Alexander, under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc</u>. 509 U.S. 579 (1993). In light of the Defendant's Motion, the plaintiff Steward Machine will similarly be filing a Motion in Limine, pursuant to <u>Daubert</u>, to preclude any testimony by the Defendant's Expert, Frank Zito

12.  STIPULATIONS OF FACT AND LAW

Stipulations of Fact -

a.  Plaintiff Steward Machine Company is a corporation incorporated under the laws of the State of Alabama with its principal place of business in the State of Alabama, defendant White Oak Corporation is a corporation incorporated under

29

WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. *Counselors At Law*
99 Pratt Street, Hartford, Connecticut 06103 *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

       the laws of the State of Connecticut with its principal place of business in the State of Connecticut, and Defendant National Union Fire Insurance Company of Pittsburgh PA is a corporation incorporated under the laws of a state other than the State of Connecticut with its principal place of business in a state other than the State of Connecticut.

b.    Prior to August 8, 1994 White Oak entered into a contract with the State of Connecticut Department of Transportation under the terms of which White Oak agreed to perform the work provided for in the contract drawings and specifications for the construction of the Tomlinson Bridge in New Haven, Project 92-435.

c.    Pursuant to § 49-41 of the Connecticut General Statutes, White Oak furnished to the State a payment bond in the amount of $87,868,378.10, with White Oak as principal and National Union as surety.

d.    The work provided for in White Oak's contract with DOT included the furnishing of certain machinery which is the subject of this action.

e.    On August 8, 1994 White Oak entered into a purchase order contract with Steward in connection with the machinery.

Defendants' contested issues of fact and law:

a.    Whether Steward is entitled to any further payments from National Union or White Oak?

b.    Whether Steward over-billed White Oak?

c.    Whether Steward's invoices to White Oak failed to accurately set forth the extent to which Steward had completed the machinery?

d.    Whether White Oak was obligated to pay Steward within 60 days of receiving an invoice from Steward, irrespective of the status of payments from DOT to White Oak?

e.    Whether Steward's entitlement to payment on its invoices was subject to the condition that the DOT approve and accept the materials for which it was seeking payment?

f.    Whether Steward was entitled to charge a 1% service charge on unpaid invoices?

g.    Whether Steward improperly calculated interest on White Oak's account?

h.    Whether Steward was entitled to apply payments received from White Oak to interest and not principal?

i.    Whether Steward wrongfully detained the machinery?

j.    Whether the subcontract imposes liability on White Oak for costs of storage, storage fees, impact damages and attorney's fees?

k.    Whether the surety is liable for costs of storage, storage fees, impact damages and attorney's fees under the bond or Conn. Gen. Stat. § 49-42?

l.    Whether White Oak's alleged failure to accept the machinery in 1996 constituted a material breach of contract?

m.    With respect to Steward's claims for storage fees, whether such fees are recoverable under Conn. Gen. Stat. § 42a-2-710?

30

WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. *Counselors At Law*
99 Pratt Street, Hartford, Connecticut 06103 *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

n.  With respect to Steward's claims for storage fees, whether the fees claimed are commercially reasonable?
o.  Whether Steward is not entitled to recover for some or all of the storage-related damages because the machinery was not available for use on the project?
p.  Whether Steward's claim for impact damages is speculative and unsupported?
q.  Whether Steward is entitled to recover its attorney's fees against National Union pursuant to the Bond and Conn. Gen. Stat. § 49-41?
r.  Whether Steward is entitled to recover its costs of storage, and, if so, whether it can establish that it incurred such costs?
s.  Whether Steward is entitled to recover interest in the amounts claimed?
t.  Whether Steward commenced a timely action on its claim as required by Conn. Gen. Stat. § 49-42?
u.  Whether Steward provided timely notice of its claim in accordance with Conn. Gen. Stat. § 49-42?
v.  Whether some portion of Steward's claim for damages, interest, service charges and attorney's fees are precluded by virtue of the terms of the August, 2000 agreement reached between the parties?

13. TRIAL TO COURT/JURY

Plaintiff's Proposed Findings of Fact and Conclusions of Law:

1.  This case arises out of a public works project involving the replacement of the Tomlinson Bridge over the Quinnipiac River in New Haven, Connecticut (the "Project"). On or about June 6, 1994, the State of Connecticut (the "State") entered into a contract (the "Contract") with White Oak Corporation ("White Oak") under the terms of which White Oak agreed to perform the replacement work described in the Contract for the contract price of $87,868,378.10.
2.  Pursuant to §49-41 of the Connecticut General Statutes, White Oak furnished to the State a payment bond in the amount of $87,868,378.10 with White Oak as principal and National Union, as surety for the protection of persons supplying labor or materials in the prosecution of the work provided for in the Contract.
3.  The Contract work included the furnishing and erecting of certain specially designed machinery (the "Machinery") to raise and lower the bridge.
4.  On August 8, 1994, White Oak entered into a purchase order contract ("the Purchase Order") with Steward Machinery Co., Inc. ("Steward") under the terms of which Steward agreed to specially manufacture the Machinery and to deliver it to White Oak in New Haven for the contract price of $7,553,000.
5.  The Purchase Order required White Oak to pay Steward's invoices within 10 days after the State paid White Oak for the Machinery or within 60 days of Steward's invoice, whichever was sooner.
6.  The Purchase Order also provided for a service charge of 1% per month on all amounts not paid in accordance with the payment terms of the Purchase Order

WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. *Counselors At Law*
99 Pratt Street, Hartford, Connecticut 06103 *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

and further provided for attorneys' fees and costs if Steward was required to engage an attorney to enforce its rights under the Purchases Order.
7. Steward commenced manufacturing the machinery in accordance with shop drawings approved by the State in September 1994.
8. Steward was planning to make its initial shipment of Machinery in September 1996.
9. However, in August 1996, White Oak advised Steward that the Project had been delayed and directed Steward not to ship the machinery to the Project until further notice.
10. In addition White Oak requested Steward to store and to maintain the Machinery.
11. Steward advised White Oak that it was not interested in storing the machinery because of the cost and disruption it would cause to Steward's on-going manufacturing operations.
12. For this reason Steward requested that either White Oak or the State arrange for the storage of the Machinery.
13. At a meeting attended by representatives of Steward, White Oak, and the State, it was agreed that Steward would store the machinery because neither White Oak nor the State had the equipment or other resources necessary to handle the machinery, some of which weighed as much as 75 tons.
14. Steward advised White Oak and the State the cost of the storage and maintenance would be in excess of $50,000 per month.
15. In late September 1996, due to the magnitude of the storage and maintenance costs and the uncertain duration of the delay, White Oak directed Steward not to manufacture the balance of the Machinery until the delay issues between it and the State were resolved.
16. By September 1996, White Oak was in serious default of the payment terms of the Purchase Order and had been in default since January 30, 1995, the date the first payment became due.
17. There were two basic reasons that it did not have the money to pay Stewards invoices for the machinery as they became due. First, White Oak had so unbalanced its schedule of values to the State that it could not fully invoice the State for the money due Steward. Second, White Oak had used some of the money it had received from the State on behalf of Steward to pay other creditors.
18. By September 1996 the past due balance on the Purchase Order was in excess of $1,000,000.
19. In April 1997 White Oak agreed to pay Steward $25,000 per week to be applied against the accrued interest until its t account was brought up to date.
20. White Oak began making the agreed upon payments on April 30, 1997 and continued so doing on a semi regular basis until July 29, 1997.
21. In late 1997 the parties met again to discuss White Oak's cessation of payments and the unpaid balance on the Purchase Order.
22. Steward had been invoicing White Oak on a monthly basis for the maintenance and storage charges since September 1996.

23. At this time White Oak advised Steward that it had no money to pay interest or maintenance and storage charges and could not pay them until it received the money from the State.
24. The State's position was that White Oak was responsible for the maintenance and storage charges until White Oak demonstrated that the delay in the project was due to the fault of the State or its agents.
25. As of December 31, 1997, the amount past due on the Steward's invoices for maintenance and storage charges was $896,514.95.
26. By letter dated January 8, 1998, Steward advised White Oak, National Union, and the State that Steward would not ship any machinery until all past due amounts were paid.
27. In the spring of 1998 Steward anticipated some open time on its manufacturing line and asked White Oak if it wanted Steward to finish up some of the Machinery for the Project that had been taken off line in September 1996 when White Oak directed Steward to suspend manufacturing the Machinery.
28. White Oak told Steward to proceed and Steward completed the machinery.
29. On June 8, 1998 Steward sent White Oak an invoice in the net amount of $194,995.00.
30. White Oak paid the invoice on September 21, 1998, 43 days after payment was due.
31. That was the last payment Steward received from White Oak prior to the commencement of this litigation.
32. As of September 21, 1998 the amount due Steward was in excess of $3,000,000.
33. Steward continued to store and maintain the Machinery through 1998 and 1999 and White Oak kept assuring Steward the White Oak would soon resolve its issue with the State, that work on the Project would resume, and that White Oak would bring its account with Steward's account up to date.
34. By December 1999 Steward concluded that it could not wait any longer for White Oak and the State to resolve their differences because it was continuing to perform storage and maintenance work and White Oak was continuing to ignore its payment obligations.
35. By letter dated December 20, 1999, Steward exercised its right to terminate the Purchase Order and made claim against White Oak and National Union on the payment bond pursuant to § 49-42 of the Connecticut General Statutes.
36. Section 49-42 provides in relevant part:
    Within ninety days after service of the notice of claim, the surety
    shall make payment under the bond and satisfy the claim, or any
    portion of the claim which is not subject to a good faith dispute,
    and shall serve notice on the claimant denying liability for any
    unpaid portion of the claim.
37. After receipt of the notice of claim, a representative of National Union traveled to Steward's offices in Birmingham, Alabama to inspect the stored Machinery and to discuss Steward's claim with representatives of Steward.

33

WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. *Counselors At Law*
99 Pratt Street, Hartford, Connecticut 06103 *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

38. By March 22, 2000, 90 days after December 20, 1999, National Union had not satisfied any portion of Steward's claim and had not served any notice on Steward denying liability for any portion of the claim.
39. On April 28, 2000, unbeknownst to Steward, White Oak, National Union, and the State entered into an agreement with Cianbro, Corp under the terms of which, inter alia, Cianbro agreed to complete White Oak's contract with the State.
40. By May 5, 2000, National Union still had provided Steward with a response to Steward's Notice of claim.
41. On May 5, 2000, Steward commenced this action against White Oak and National Union on the Bond and against White Oak on the Purchase Order claiming $5,000,000 in damages for White Oak's breach of its obligations under the Purchase Order.
42. On July 24, 2000, National Union and White Oak commence an action against Steward in this Court (Civil Action 300CV1389) claiming, inter alia, that Steward's continued possession of the machinery was wrongful and that White Oak and National were entitled to the immediate possession of the machinery and seeking a Prejudgment Remedy Of Replevin (the "Replevin Action).
43. On August 7, 2000 this court issued an order entitled "Order Granting Prejudgment Remedy Of Replevin" (the "Order").
44. On August 11, 2000, Steward filed a Notice of Appeal from the Order in the Replevin Action.
45. On August 28, 2000, Steward, National Union, and White Oak entered into an agreement under the terms of which, inter alia, Steward agreed to withdraw its appeal from the Order in the Replevin Action and National Union agreed, inter alia, to:
    > Pay to Steward the sum of $750,000 against the claims asserted by Steward in the Bond Action, it being understood and agreed that (a) said payment shall be applied first in reduction of any recovery by Steward against National in the Bond Action, and (b) said payment is unconditional and will be returned to National even if Steward recovers less than $750,000, or takes nothing in the Bond Action.
46. Steward's right to recover under the Bond is governed by C.G.S. § 49-42, which provides in relevant part:
    > (a) . . . [a claimant] may enforce his right to payment under the bond by serving a notice of claim within one hundred and eighty days after the date on which he performed the last of labor or furnished the last of the material for which claim is made, on the surety that issued the bond and a copy of the notice on the contractor named as principal in the bond.
    > (b) . . . no such suit shall be commenced after one year after the day on which the last of the labor was performed or material was supplied by the claimant.
47. Storage and maintenance work is labor within the meaning of § 49-42.

48. Steward's served its notice of claim on December 20, 1999, which was less than 180 days from the date that it performed the last of its labor.
49. Steward commenced this action on May 5, 2000, which was less than one year from the date that it performed the last of its labor.
50. The Purchase Order called for the sale of goods within the meaning of §§ 42a-2-201 et. seq. of the Connecticut General Statutes (Article 2 of the Uniform Commercial Code, the "Code"). <u>Bead Chain Manufacturing Co. v. Saxton Products, Inc.</u>, 183 Conn.266, 270 (1981)
51. Steward is entitled to recovery of the unpaid contract balance of $1,798,902.96
52. In addition to providing for recovery of the unpaid contract balance, the Code provides for the recovery "incidental damages" which are defined in § 42a-2-710 as follows:
    > Incidental damages to an aggrieved seller include <u>any commercially reasonable charges</u>, expenses or commissions incurred in stopping delivery, in the transportation, <u>care and custody of goods</u> after the buyer's breach, in connection with return or resale of the goods or otherwise. (Emphasis added)
53. Steward is entitled to recovery of "incidental damages" in the amount of $4,029,443.
54. Pursuant to the Purchase Order Steward is entitled to recovery of the reasonable attorneys' fees it incurred in prosecuting this action to judgment.
55. The court finds that the reasonable attorneys' fees incurred by Steward are $300,000.
56. Steward is entitled to recover of National Union and White Oak, the sum of $6,128,345.
57. Against this sum National Union are entitled to a credit of $750,000 pursuant to the agreement of August 24, 2000.
58. Steward is entitled to a net judgment of $5,378,345.

Defendants' Proposed Findings of Fact and Conclusions of Law

1. Steward is not entitled to any further payments from National Union or White Oak.
2. Steward over-billed White Oak.
3. Steward's invoices to White Oak failed to accurately set forth the extent to which Steward had completed the machinery.
4. White Oak was not obligated to pay Steward within 60 days of receiving an invoice from Steward, irrespective of the status of payments from DOT to White Oak.
5. Steward's entitlement to payment on its invoices was subject to the condition that the DOT approve and accept the materials for which it was seeking payment.
6. Steward improperly charged a 1% service charge on unpaid invoices.
7. Steward improperly calculated interest on White Oak's account.
8. Steward was not entitled to apply payments received from White Oak to interest and not principal.
9. Steward wrongfully detained the machinery.

10. The subcontract does not impose liability on White Oak for costs of storage, storage fees, impact damages and attorney's fees.
11. The surety is not liable for costs of storage, storage fees, impact damages and attorney's fees under the bond or Conn. Gen. Stat. § 49-42.
12. White Oak's alleged failure to accept the machinery in 1996 did not constitute a material breach of contract.
13. With respect to Steward's claims for storage fees, such fees are not recoverable under Conn. Gen. Stat. § 42a-2-710. See, e.g. Ernst Steel v. Horn Construction, 104 AD2d 55, 481 NYS2d 833 (1994).
14. With respect to Steward's claims for storage fees, the fees claimed are not commercially reasonable.
15. Steward is not entitled to recover for some or all of the storage-related damages because the machinery was not available for use on the project.
16. Steward's claim for impact damages is speculative and unsupported.
17. Steward is not entitled to recover its attorney's fees against National Union pursuant to the Bond and Conn. Gen. Stat. § 49-41.
18. Steward is not entitled to recover its costs of storage, and cannot establish that it incurred such costs.
19. Steward is not entitled to recover interest in the amounts claimed.
20. Steward failed to commence a timely action on its claim as required by Conn. Gen. Stat. § 49-42.
21. Steward failed to provide timely notice of its claim in accordance with Conn. Gen. Stat. § 49-42.
22. Some portion of Steward's claim for damages, interest, service charges and attorney's fees are precluded by virtue of the terms of the August, 2000 agreement reached between the parties.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

BY _____
Gary M. Case
Wolf, Horowitz, Etlinger & Case, LLC
99 Pratt Street – Suite 401
Hartford, CT 06103
(860) 724-6667
ct09610

BY _____
Gary M. Case
Wolf, Horowitz, Etlinger & Case, LLC
99 Pratt Street – Suite 401
Hartford, CT 06103
(860) 724-6667
ct09610

STEWARD MACHINE COMPANY


BY _____
Barbara Crowley
William J. Egan, Esq.
Egan & Crowley, P.C.
234 Church Street
New Haven, CT 06510
phone - 203-498-8809
fax - 203-498-8769
ct04161


WHITE OAK CORPORATION

BY _/s/ Jane I. Milas_____
Jane I. Milas
Garcia & Milas, P.C.
44 Trumbull Street
New Haven, CT 06510
Phone: (203) 773-3824
Fax: (203) 782-2312
ct01271

STEWARD MACHINE COMPANY


BY _____
Barbara Crowley
William J. Egan, Esq.
Egan & Crowley, P.C.
234 Church Street
New Haven, CT 06510
phone - 203-498-8809
fax - 203-498-8769
ct04161




WHITE OAK CORPORATION



BY _____
Jane Milas
Garcia & Milas
44 Trumbull Street
New Haven, CT 06510
ct01271


### CERTIFICATION

   This is to certify that a true copy of the foregoing document was mailed via first class postage, prepaid, this 10th day of March, 2004 to all counsel of record.

William Egan
Barbara Crowley
Egan & Crowley
234 Church Street
New Haven, CT 06510

37

Jane Milas
Garcia & Milas
44 Trumbull Street
New Haven, CT 06510

BY 
Gary M. Case

51288