UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEWARD MACHINE COMPANY | : | 3:00 CV 00834 (SRU) |
| PLAINTIFF | : | |
| | : | |
| VS. | : | |
| WHITE OAK CORPORATION et al | : | |
| DEFENDANT | : | December 16, 2004 |

**DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA's MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE AND/OR MOTION FOR SUMMARY JUDGMENT REGARDING CERTAIN CLAIMS OF THE PLAINTIFF STEWARD MACHINE COMPANY**

1. **Introduction**

The claims of Steward Machine Company ("Steward") against National Union Fire Insurance Company ("National Union") include:

1. A "contract balance claim", consisting of the amounts which Steward claims it earned but was not paid for work performed under its Purchase Order subcontract with White Oak Corporation ("White Oak");

2. A "costs of storage claim", consisting of alleged labor and material costs actually incurred by Steward to store, move and maintain the machinery at its Birmingham, Alabama facility while the machinery was in storage;

3. A "business disruption and inefficiency claim", consisting of labor costs incurred by Steward on other projects allegedly caused by interference from storage of the machinery at Steward's Birmingham, Alabama facility;

4. A "storage fee claim", consisting of an extra-contractual fee charged by Steward

1

for storing the machinery from 1997 through 2000, based on a rate which Steward claims is commercially reasonable; and

5. A "prejudgment interest claim", which consists of prejudgment interest calculated through time of trial on each of the claims discussed above.

As a matter of law, Steward cannot recover on the following portions of its claims:

**A.    Business Disruption and Inefficiency Claim**

Steward claims that National Union is liable for the damages reflecting disruption to its operations caused by the presence of the machinery during the "storage" period. Steward claims that White Oak was in breach of its contract by failing to take delivery on the machinery, and as a consequence of this breach, Steward is entitled to certain consequential damages flowing from that breach. These damages consist of business disruption losses, which Steward calculated based on its labor cost overruns on other projects while the machinery was allegedly in "storage" from 1997 to 2000. None of the damages asserted in this claim reflect labor costs incurred on the White Oak project. Instead, Steward calculates this claim based on additional labor costs incurred by Steward to perform other projects.

As a matter of law National Union is not liable for these damages, even if White Oak is liable. A payment bond surety is not liable for its principal's breach of contract damages under Connecticut law. A payment bond surety is also not liable for costs incurred by a claimant to perform work on projects other than the bonded project. The surety's liability under the statute – and the plain language of the bond issued – is to pay the claimant for labor and materials incurred on the bonded project. Steward's claim for business disruption damages consists of labor costs incurred on other projects. See infra, pp. 7-23.

2

Connecticut General Statutes § 42a-2-701 permits an aggrieved seller to recover its "incidental damages" against a buyer. Assuming that Steward can establish the prerequisites to recovery under § 42a-2-701, it cannot recover its business disruption damages under this statute. Steward's claim for business disruption and inefficiency damages presents a claim for "consequential damages". An aggrieved seller is not entitled to recover "consequential damages" under § 42a-2-701. As a matter of law Steward cannot recover these damages from either White Oak or National Union under § 42a-2-701. See infra, pp. 23-28.

B.  **Storage Fee Claim**

Steward will claim that National Union and White Oak are liable for $2,111,017.23 in "storage fees" charged by Steward to White Oak in connection with the machinery. Steward contends that these "storage fees" are an element of consequential damages which are recoverable based on White Oak's alleged breach of contract pursuant to Connecticut General Statutes § 42a-2-710. As a matter of law, neither White Oak nor National Union is liable for these "fees". While Steward's theory is premised on § 42a-2-710 (aggrieved seller liable for "incidental damages") this statute applies only to actual out-of-pocket expenses incurred by the seller. See infra, pp. 28-38. The "storage fees" were not actual expenses incurred or paid by Steward. Instead, Steward calculated the "storage fees" based on amounts which Steward would have paid, but did not pay, for storing the machinery. These hypothetical damages are not since § 42a-2-710 limits an aggrieved seller's remedies to its actual out-of-pocket expenses.

This claim is also not cognizable under the bond and § 49-42. A payment bond surety is not liable for its principal's breach of contract damages. Moreover, a claimant under § 49-42

3

WOLF, HOROWITZ, ETLINGER, & CASE L.L.C. Counselors At Law
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

must prove actual labor or material costs to recover under the bond. A payment bond surety is not liable for a claimant's fictitious, unrealized costs. See infra, pp. 28-38.

### C. Prejudgment Interest Claims

Steward's claims include substantial amounts of prejudgment interest accrued after August 24, 2000. The parties entered into an Agreement on August 24, 2000, pursuant to which Steward agreed that it would not seek damages accruing after August 24, 2000. Steward is in violation of the agreement by seeking interest accruing after August 24, 2000. Any prejudgment interest accrued after August 24, 2000 may not be sought or recovered by Steward in this case. See infra, pp. 38-41.

### D. Proper Measure of Recovery against National Union

Assuming that Steward is entitled to anything from National Union as a result of the delays on the project, the proper measure of recovery would be Steward's alleged costs of storage claim, which consist of the additional labor and material costs actually incurred by Steward in the prosecution of the bonded project, i.e. the actual costs to store, move and maintain the machinery. Steward claims that it incurred $431,669 in such costs. To the extent that National Union is liable for any of Steward's alleged additional costs, its liability is limited to Steward's actual labor and material costs incurred on the bonded project. See infra, p. 38.

## 2. Statement of Undisputed Material Facts

1. On or about August 8, 1994 Steward and White Oak entered into a Purchase Order Contract (the "Purchase Order"), pursuant to which Steward agreed to fabricate and deliver certain bridge lifting machinery ("the Machinery") to White Oak, in consideration for an

4

agreed-upon total price of $7,553,000. See Affidavit of Frank Zito ("Zito Affidavit"), ¶ 6. A true copy of the Purchase Order is attached as Exhibit 1 to the Zito Affidavit.

2.  The Machinery was to be provided for a State of Connecticut Department of Transportation Project for the Construction of the Tomlinson Bridge, New Haven Connecticut ("the Project"). Zito Affidavit, ¶ 7. White Oak was general contractor on the Project.

3.  On or about June 6, 1994 National Union as surety and White Oak as principal issued a payment bond ("the Bond") for the Project. Zito Affidavit, ¶ 8. A true copy of the Bond is attached as Exhibit 2 to the Zito Affidavit.

4.  In this action Steward has asserted a business disruption and inefficiency claim against National Union and White Oak for damages caused as a result of the alleged interference in Steward's operations caused by the presence of the Machinery at Steward's facilities from 1997 through 2000 (the "Storage Period"). This claim has been calculated based on the additional labor hours which Steward claims it was required to incur on other projects in its facilities during the Storage Period. None of the damages asserted in this claim reflect labor costs incurred on the White Oak project. The calculations supporting of this claim are included in the Expert Witness Reports of J. Lester Alexander. According to Mr. Alexander's last report, Steward claims to have incurred additional labor costs of $1,895,551 on projects other than the White Oak Project. See Zito Affidavit, ¶ 9 & 10.

5.  In this action, Steward has asserted a "storage fee claim" of $2,111,017.23. Steward has calculated this claim by imposing a fee for its alleged storage of the Machinery during the Storage Period. The Purchase Order makes no reference to any "storage fee" to be paid by White Oak. In calculating the storage fee, Steward claims to have applied a storage rate

5

which it allegedly obtained from warehouse and storage facilities. The storage fee claim asserted by Steward does not reflect any actual out-of-pocket expenses incurred by Steward to store the machinery, but rather the costs which Steward claims it would have paid, but did not, if it had placed the machinery in storage in a storage facility. See Zito Affidavit, ¶ 11.

6. On or about August 24, 2000, Steward, National Union and White Oak entered into an Agreement (the "August 2000 Agreement") with respect to the Machinery and this Action. Paragraph 12 of the August, 2000 Agreement provides:

> Steward National Union and White Oak each agrees that it will not seek to recover in the Bond Action any damages accruing after the date of this Agreement.

See Zito Affidavit, ¶ 12, Exhibit 3.

7. Each of Steward's claims against National Union include substantial claims for prejudgment interest accruing after August 24, 2000. See Zito Affidavit, ¶ 13.

8. Steward's claim against National Union includes a "costs of storage claim" of $ 431,669, consisting of labor and material costs which Steward claims it actually incurred to store, move and maintain the machinery during the Storage Period. See Zito Affidavit, ¶ 14.

3. **Argument**

A. **The Plaintiff's Claims For $1,895,551 in Business Disruption And Interference Damages Are Not Recoverable As A Matter Of Law Against National Union Because The Surety's Liability Does Not Extend To Alleged Costs Incurred By Steward On Projects Other Than The Bonded Project and Because National Union is not Liable for Breach of Contract Damages asserted against White Oak**

Steward claims that its operations suffered business disruption and interference as a result of the presence of the machinery during the storage period. For the reasons set forth below, assuming arguendo that Steward can prove that it sustained these damages, as a matter of law they are not recoverable from the Defendant National Union. National Union's obligation as

6

WOLF, HOROWITZ, ETLINGER, & CASE L.L.C. Counselors At Law
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

payment bond surety is determined by the provisions of the bond, read in conjunction with Connecticut's payment bond statute, Conn. Gen. Stat. § 49-42. Under the bond and the statute, the surety's liability does not extend to additional costs and expenses which a subcontractor allegedly incurs in the prosecution of projects other than the bonded job. The surety's obligation is to pay for labor and materials provided by the claimant for the bonded project. Steward's business disruption claim asks National Union to pay Steward's labor charges on other, non-bonded projects. The surety's liability under the bond and § 49-42 does not extend to payment for alleged costs incurred by the claimant on projects other than the bonded project.[1]

This claim appears to be in the amount of $ 1,895,551, as calculated by the Plaintiff's expert, Les Alexander. Alexander calculated these damages using the following methodology. He took a sample of Steward's projects during three time periods: the "construction period" (from 1994-1996, when Steward was working on the White Oak machinery); the "storage period" (from 1997-2000, when Steward was allegedly storing the machinery); and the "look-back period" (from 2001-2002, after Steward had shipped the machinery). For each of the projects included in the sample, he compared the alleged "bid hours" (or the number of labor hours which Steward had projected it would require to complete the job) with the alleged "actual hours" (or the actual labor hours which Steward needed to finish the project). He then calculated an "inefficiency factor" for each period, which was essentially a rate purporting to show the tendency of Steward's actual labor hours to exceed its bid hours on the sampled jobs for each period. He then compared the inefficiency factor for the storage period versus the look-back period (he chose to ignore the results received for the construction period). He concluded that

---

[1] There are other legal and factual reasons why Steward cannot recover on this claim. These

during the storage period Steward had decreased efficiencies in its fabrication shop of 38.1% for large jobs and 65.4% for small jobs. In other words, he concluded that 38.1% and 65.4% of Steward's bid hours during the storage period *on other, non-bonded jobs* were inefficient hours attributed to the presence of the White Oak machinery (i.e., hours which Steward would not have incurred had the White Oak machinery not been in storage). He similarly concluded that Steward had decreased efficiencies in its machine shop of 17.2% and 3.7% for *other non-bonded jobs*. Again, these represented labor hours *on jobs other than the White Oak job* which, according to Alexander, were inefficient hours. See Zito Affidavit, ¶ 10 & 11.

Alexander thereafter took these inefficiency rates and applied them to the actual fabrication and machine shop hours incurred by Steward on the sampled *non-bonded jobs* during the storage period. He concluded that, with respect to these other jobs, Steward had incurred $784,957 in labor costs in its fabrication shop to complete these jobs, which it would not have incurred but for the presence of the White Oak machinery. With respect to the machine shop, Alexander concluded that Steward had incurred $353,305 in labor costs which it would not have incurred on these jobs but for the White Oak machinery. None of these labor charges were incurred on the machinery or for the White Oak project. . See Zito Affidavit, ¶ 10 & 11.

Alexander also concluded that Steward had sustained an additional $757,287 in labor costs on "other jobs". These "other jobs" consisted of Steward project hours which had not been considered in the sample of jobs which Alexander had included in his study. Alexander took all of Steward's remaining labor hours on these "other jobs", and then applied to these hours the same inefficiency factor which he had calculated as to the jobs which were included in the

issues will be briefed and addressed separately at trial by National Union.

sample. He concluded that the "other job" hours must have suffered from the same inefficiency as the job hours which were included in his sample (even though he lacked estimates or reliable date to determine the actual performance of these "other jobs").  In this fashion Alexander concludes that Steward incurred an additional $757,287 in actual labor costs on these "other jobs". Again, the "other jobs" claim reflects additional labor hours incurred in the prosecution of other, non-bonded jobs, and did not represent costs incurred for the work of laborers on the machinery or for the White Oak project. See Zito Affidavit, ¶ 10 & 11.

Alexander's report makes clear that Steward's business disruption and inefficiency claim consists of the additional labor costs which Steward claims it incurred to complete other projects during the Storage Period.  None of the labor costs included in this claim were costs incurred to complete or maintain the White Oak machinery.  None of the labor costs included in this claim were costs incurred in furtherance of the Project.  All of the costs reflect work performed by Steward on various projects which were not covered by National Union's Bond.  As a matter of law, National Union's liability under the Bond and Connecticut law does not extend to work performed and costs incurred by the claimant on projects other than the bonded project.  The fact that White Oak may be liable for these damages under a breach of contract theory does not render National Union liable for them.

The scope of the surety's obligations under the bond presents a question of law. The liability of sureties "is to be determined by the specified conditions of the bond … When a bond is required by statute, a court will read the statute into the contract between the principal, surety and obligee." Goldberg v. Hartford Fire Insurance Company, 269 Conn. 550, 558 (2004). The bond must be construed

to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction ... The intent of the parties is to be ascertained by a fair and reasonable construction of the written words and language ... the language used must be accorded its common, natural and ordinary meaning and usage where it can be sensibly applied to the contract ... Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms.

Id.

The language of the bond is clear and unambiguous. National Union's obligation is to pay for labor and materials used or employed in the execution of the bonded project – i.e., White Oak's construction of the Tomlinson River Bridge. National Union's liability does not extend to labor employed on other, non-bonded projects. The bond provides in pertinent part:

> THE CONDITION OF THIS OBLIGATION is such, that WHEREAS said Principal [White Oak] has entered into a written contract with the Transportation Commissioner or his authorized agent acting as agent for the State of Connecticut, for the construction of the Replacement of Bridge No. 00337 (Tomlinson Bridge), U.S. Route 1 over the Quinnipiac River in the Town of New Haven ... which contract, together with all plans and specifications therefor, is hereby referred to, incorporated in, and made a part of this bond as though herein fully set forth.
> NOW THEREFORE, If said principal shall well and faithfully make payment *for all materials and labor used or employed in the execution of such contract*, to the extent as required by the General Statutes of Connecticut, as revised, then this obligation shall be null and void, otherwise it shall remain and be in full force and effect.

(emphasis added). See Payment Bond, attached as Exhibit 2 to Zito Affidavit.

The bond's limitation of coverage is further confirmed by Connecticut's payment bond statutory scheme. These statutes reflect that a bond issued under the statute is intended to compensate a subcontractor for labor and materials provided in the prosecution of the bonded project, and not labor and materials provided in the prosecution of other non-bonded projects. Pursuant to Connecticut General Statutes § 49-41(a) (Rev. to 1993), any public work contractor was required to provide a payment bond "for the protection of persons *supplying labor or*