*materials in the prosecution of the work provided for in the contract*[.]"[2] (emphasis added). The amount of the bond is set at the amount of the bonded contract. Id. Connecticut General Statutes § 49-42(a) (Rev. to 1993) similarly provides that a payment bond issued by the statute is intended to compensate subcontractors for labor and materials *provided to the bonded projec*t:

> Every person who has furnished labor or material *in the prosecution of the work provided for in such contract* in respect of which a payment bond is furnished under the provisions of section 49-41 and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which the claim is made, may enforce his right to payment under the bond by serving a notice of claim within one hundred eighty days after the date on which her performed the last of the labor or furnished the last of the material for which the claim is made … If the surety denies liability on the claim, or any portion thereof, the claimant may bring action upon the payment bond in the superior court *for such sums* and prosecute the action to final execution and judgment[.]

(emphasis added).

This statute confirms that the intent of the payment bond is to compensate subcontractors for labor and materials supplied for the bonded project, not for labor and materials supplied to other projects. The claimant's right of action under the bond is described as an action to recover "such sums". The "such sums" referred to are the labor and materials provided "in the prosecution of the work provided for in such contract". The statute does not define "such sums" as including costs incurred on other, non-bonded projects.

By seeking to recover its costs and lost profits on other, non-bonded projects, Steward is asking this Court to re-write the bond and the statute. Neither the bond nor the statute obligate the surety to compensate the subcontractor for all consequential damages allegedly flowing from

---

[2] The version of the payment bond in effect at the time of the issuance of the bond controls. See American Mason's Supply Co. v. F.W. Brown, 174 Conn. 219, 222-25 (1978) (amendments to § 49-42 are not given retroactive effect).

11

WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. *Counselors At Law*
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

the actions of the bonded contractor. The bond is not intended to be an insurance policy against consequential damages flowing to an aggrieved subcontractor. Instead, the purpose of the bond is to ensure that public works structures are fully completed. The presence of the payment bond fulfills this purpose by ensuring subcontractors that they will be paid for labor and materials provided in *the prosecution of the work on the bonded project.*

If the intent of the bond was to protect the subcontractor for cost overruns on other projects, the language of the bond and the statute would look nothing like the provisions of the bond and statute applicable here. For example, the bond and statute would have defined the surety's liability as "all damages incurred by the claimant as a consequence of the bonded project." Alternatively, the bond and statute would define the measure of liability as "all damages caused by the principal in connection with the bonded project". However, a plain reading of the statute and bond demonstrates that the measure of the surety's liability is defined by the labor and materials provided in the prosecution of the bonded work. The business disruption and inefficiency damages claimed by Steward reflect labor hours and costs incurred in the prosecution of jobs other than the bonded project. For this reason, Steward cannot recover these damages from National Union.

Steward's interpretation of the bond and § 49-42 appears to be a "but for" theory of causation – i.e., National Union is liable any damages Steward would not have incurred but for the presence of the White Oak machinery. There is no caselaw or statutory support for this theory. Application of this standard would lead to truly absurd results. For example, under Steward's theory, if the machinery had caused a fire at its Birmingham facility while in "storage" and caused damage to the facility, National Union would somehow be liable to pay for the fire

12

losses. Or, if the machinery had caused an injury to one of Steward's employee while in "storage", National Union would somehow be liable for the employee's injuries. Under both of these examples, the damages would not have occurred but for the presence of the White Oak machinery, and – under Steward's novel reading of the statute – would be covered by the bond. Clearly such a result is absurd. A payment bond surety's liability under § 49-42 is to pay for materials and labor used in the prosecution of the bonded project – to hold otherwise would transform the bond into an insurance policy guaranteeing the general contractor's compliance with the contract. <u>Blakeslee Arpaia Chapman v. EI Constructors</u>, 1995 Conn. Super. LEXIS 545, p. 11 (1995) (copy attached as Exhibit 1) <u>affirmed</u> 239 Conn. 708 (1997) (the payment bond surety's liability under § 49-42 "is limited to payment for labor and material on account of the contract, and for appliances and equipment used or employed in the execution of the contract. These are [the surety's] specific responsibilities, it is not a general guarantor of all the obligations of [the general contractor]; it is not an insurer.")

No case construing § 49-42 has held that a payment bond surety is liable to a claimant for labor costs incurred on other non-bonded projects. The Connecticut Supreme Court has expressly rejected the argument that a surety's liability under a bond issued pursuant to § 49-42 extends the type of consequential disruption and delay damages claimed by Steward. Instead, the surety's liability under § 49-42 is limited to the claimant's material and labor, and profits for this labor and material, *for work actually performed on the bonded project*. See <u>Blakeslee Arpaia Chapman v. EI Constructors</u>, 239 Conn. 708 (1997) (hereinafter "<u>Blakeslee</u>"). In <u>Blakeslee</u> the general contractor, EI Constructors, entered into a construction contract with the City of Waterbury to build a water treatment plant. Aetna as surety issued a payment bond for

13

the project in accordance with § 49-42. EI defaulted on the contract, and Waterbury, as obligee, took over the job. Blakeslee thereafter sued EI and Aetna for various categories of damages which it claimed to have incurred as a result of EI's breach of contract. Specifically, Blakeslee sought recovery for the lost profits which it would have earned had it been allowed to complete its work on the job. The Connecticut Supreme Court held that Aetna as surety was not liable for lost profits on work which the claimant never performed on the bonded project, even though EI as principal was liable for these same damages. The Court noted the "guiding principle of § 49-42 – subcontractors are to be reimbursed the value of labor and materials *provided on a public works project*." Blakeslee, 239 Conn. at 727 (emphasis added). The Court held that the surety was not liable for work not actually performed on the bonded project. The Court expressly rejected the argument that Aetna as surety "assumed responsibility under the payment bond for damages caused by EI's breach of contract, including profits the plaintiff would have earned had it performed under the subcontract." Blakeslee, 239 Conn. at 723. The Court noted the lack of authority for recovery against a surety for work not performed under the bonded project. The Court observed that "the language and purpose of the act, requiring payment for work *performed* or materials *supplied*, preclude such recovery." Id. at note 19, citing Connecticut General Statutes § 49-42(a) (Rev. to 1983). The Court found no language in the bond itself extending the surety's liability to profits for work not performed on the bonded project. Id.

The language of the payment bond in Blakeslee is very similar to the language of the bond issued by National Union in this case. In Blakeslee, the condition of the bond was that EI "pay for all materials, and for all labor performed, and for the rental or hire of vehicles, power shovels, concrete mixers, tools and other appliances, and equipment *used or employed in the*

14

*execution of said contract."* Blakeslee, 239 Conn. at 717, note 13 (emphasis added). Here the condition of the bond was that White Oak "well and faithfully make payment *for all materials and labor used or employed in the execution of such contract."* (emphasis added). Both bonds limit the surety's liability to payment for materials and labor "used or employed in the execution of" the bonded contract. In Blakelsee, the Court held that these terms did not render the surety liable for all consequential damages caused by the bonded contractor, and in particular the surety was held not liable for work not actually performed by the claimant on the bonded project. Here, National Union as surety is not liable for the business disruption damages claimed by Steward. Such damages do not represent labor or material employed in the execution of the bonded contract. National Union is not a guarantor of White Oak's contractual obligations.

Steward may argue that National Union is liable for the business disruption damages because, as surety, its liability is co-extensive with that of White Oak's liability. The Connecticut Supreme Court has expressly rejected this argument. While a surety steps into the shoes of the bonded principal for the purpose of asserting the principal's defenses, this does not make the surety liable dollar-for-dollar for all damages allegedly caused by the bonded principal. To the contrary, the Connecticut Supreme Court has held that a surety's liability does not extend to damages which are not covered by the bond (and the statute giving rise to the bond) *even where the bonded principal may be liable to the Plaintiff for these same damages.* See, Blakeslee, 239 Conn. at 723 (rejecting argument by claimant that surety's liable under payment bond extends to

15

all damages caused by the principal's breach of contract). See also Ames v. Commissioner of Motor Vehicles, 267 Conn. 524 (2004) ("Ames").[3]

The Connecticut payment bond statute was patterned after the federal Miller Act. Connecticut courts have consistently relied upon cases construing the Miller Act as guidance in the construction and interpretation of § 49-42. Caselaw under the Miller Act consistently holds that a payment bond surety is not liable for the types of consequential damages which Steward is seeking in connection with its business disruption claim. The surety's liability is limited to the actual costs incurred by the claimant *in the prosecution of the work of the bonded project*, and does not extend to the lost profits or other consequential damages claimed by the subcontractor. United States ex rel TMS Mechanical v. Millers Mutual Fire Insurance Co. of Texas, 942 F.2d 946, 952 (5th Cir. 1991) (Miller Act surety's liability for delay damages incurred by subcontractor limited to "additional or increased costs actually expended in furnishing the labor or materials in the prosecution of the work provided for the work and attributable to the delay, or the subcontractor's 'out-of-pocket costs of delay'"); United States ex rel Mariana v. Piracci, 405

---

[3] In Ames the plaintiff made claim against a surety upon a motor vehicles dealer bond. The principal on the bond was a defunct car dealer. The plaintiff had previously obtained a judgment against the dealer, which included damages not only for the actual out of pocket costs incurred by the consumer, but also punitive damages and attorney's fees. The plaintiff sued the surety seeking recovery of the punitive damages and attorney's fees. The plaintiff argued that the surety was liable for these damages because the principal car dealer was also liable. The surety asserted that the measure of its liability under the bond was limited only to the out-of-pocket losses incurred by the claimant, and did not extend to punitive damages and attorney's fees. The Connecticut Supreme held that the surety was not liable for the punitive damages and attorney's fees imposed against the car dealer. It reasoned that "[t]he liability of sureties is to be determined by the specified conditions of the bond ... When a bond is required by statute, a court will read the statute into the contract between the principal, surety and obligee." Ames v. Commissioner of Motor Vehicles, 267 Conn. at 529. Construing the statutes mandating the bond, the Court concluded that the surety was not liable for the plaintiff's attorney's fees and punitive damages, even though the bonded principal was liable for these same damages. Id

16

F.Supp. 904, 907 (D.C. 1975) (Miller Act payment bond surety's liability for delay damages limited to "actual expenditures for labor or material utilized in the performance of the subcontract"); United States ex rel Lochridge-Priest, Inc.v. Con-Real Support Group, Inc., 950 F.2d 284, 287 (5th Cir. 1992) (while Miller Act payment bond surety may be liable for certain delay damages incurred by the claimant, the Court must "carefully limit the recovery to costs actually expended in furnishing the labor or material in the prosecution of the work provided for in the contract."); Mai Steel Service, Inc. v. Blake Construction Company, 981 F.2d 414, 418 (9th Cir. 1992) (while Miller Act payment bond surety may be liable for certain delay damages, its liability limited to the claimant's "out-of-pocket labor and material costs incurred in completing the [bonded] contracts"; however, surety's liability does not extend to lost profits as "a claim for lost profits does not involve actual outlay and thus 'falls outside both the letter and the spirit of the [Miller] Act.'"); United States ex rel Pertun Construction Company v. Harvesters Group, Inc., 918 F.2d 915, 918-19 (11th Cir. 1990) (Miller Act payment bond surety liable for delay damages in the form of "actual expenditures for labor or materials utilized in the performance of the subcontract", and not lost profits); Consolidated Electrical & Mechanicals, Inc. v. Biggs General Contracting, Inc., 167 F.3d 432, 436 (8th Cir. 1999) (claims for lost profits excluded under the Miller Act; surety's liability is limited to costs "expended in furnishing labor or material in the prosecution of the work provided for" in the bonded job); United States ex rel Skip Kirchdorfer v. Aegis/Zublin Joint Venture, 869 F.Supp. 387, 394 (E.D.Va. 1994) ("a Miller Act surety is not liable for damages caused by the prime contractor's breach of contract ... [l]ikewise lost profits are not recoverable from the surety in an action on the Miller Act payment bond[.]"); Jesco

Construction Corp. v. Frysco Transport, Inc., 1998 U.S.Dist. LEXIS 6444, p. 4 (E.D.N.C. 1998) (copy attached as exhibit 2) (Miller Act payment bond surety not liable for "any anticipated profits" claimant would have obtained but for the principal's breach of contract; recovery against the surety "is limited to the actual value of labor and materials actually furnished in the performance of work under the subcontract.")

The United States District Court for the District of Pennsylvania held that lost profits of the type sought by Steward were not recoverable against a Miller Act payment bond surety in United States ex rel McFadden Mechanical v. FSEC, Inc., 2001 U.S.Dist. Lexis 24201 (E.D. Pa. 2001) (copy attached as Exhibit 3). Here the claimant subcontractor alleged that, as a result of its wrongful termination by the general contractor, it incurred damages consisting of its "lost anticipated profits", which reflected anticipated profits on future construction work which it did not receive because of the termination. The Court held that these damages were not recoverable against the surety: "Under the Miller Act, [the claimant] is limited to its out-of-pocket expenses…. In this regard, lost profits are clearly excluded". States ex rel McFadden Mechanical v. FSEC, Inc., 2001 U.S.Dist. Lexis, at 36. The Court also noted that "courts must carefully limit recoveries under the Miller Act to costs actually expended in furnishing the labor or material." Id. Steward's claim here represents anticipated profits which it contends it lost on the "impacted" jobs due to White Oak's alleged breach of contract. This claim plainly constitutes one for "lost anticipated profits" and, as such, is not covered by the bond.

Other Courts have held that a payment bond surety's liability does not extend to breach of contract damages of the type claimed by Steward. See Lenon v. St. Paul Mercury Insurance, 136 F.3d 1365 (10th Cir. 1998). Here the plaintiffs were trustees of union benefit funds. They

claimed that the bonded principal had breached labor laws by failing to hire union workers for the bonded project. They brought suit against a surety under a payment bond issued in accordance with Colorado statutes. In their action against the surety, they sought reimbursement of fringe benefit payments which would have been paid to the benefit funds had the principal hired the union workers for the project. The surety argued that it was not liable for these damages under the Colorado payment bond statute because the surety's obligation was limited to payment for actually performed in the prosecution of the bonded project, and did not extend to breach of contract damages. The Colorado payment bond statute, similar to Conn. Gen. Stat. § 49-42, requires a payment bond for public works projects, to ensure payment to subcontractors and suppliers which have supplied labor or materials "used or performed in the prosecution of the work provided for in [the bonded] contract." Lenon v. St. Paul Mercury Insurance, 136 F.3d at 1373 quoting Colo. Rev. Stat. § 38-26-105(1). The Tenth Circuit Court of Appeals agreed with the surety and concluded that the surety's liability under the payment bond and statute did not extend to breach of contract damages otherwise available against the principal on the bond. Lenon v. St. Paul Mercury Insurance, 136 F.3d at 1374. The Court noted the general rule that breach of contract damages, including lost profits, are not recoverable under public works bond statutes. Id. citing Lucas v. Western Casualty & Surety Company, 176 F.2d 506, 508 (10th Cir. 1949) (interpreting Oklahoma public works bond statute); L.P. Friedstedt Co. v. U.S. Fireproofing Co., 125 F.2d 1010, 1012 (10th Cir. 1942) (interpreting federal Heard Act, predecessor to Miller Act); United States ex rel Mobile Premix Concrete, Inc. v. Santa Fe Engineers, Inc., 515 F.Supp. 512, 516 (D. Colo. 1981) (interpreting Miller Act). The Tenth Circuit also cited with approval the Connecticut Supreme Court's holding in Blakeslee Arpaia

19

WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. Counselors At Law
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

Chapman v. EI Constructors, noting the Blakeslee Court's observation that "no jurisdiction allow[s] recovery of unearned profits under Miller Act; the language and purpose of the [Miller Act], requiring payment for work performed or materials supplied, preclude such recovery." Lenon v. St. Paul Mercury Insurance, 136 F.3d at 1374. See also QDR Consultants & Development Corp. v. Colonia Insurance Company, 251 A.D.2d 641, 643 (N.Y.App.Div. 1998) (under New York law, surety not liable for lost profits claimed by subcontractor).

The Supreme Court of New Mexico held that a surety on a "Little Miller Act" bond was not liable for a claim of lost profits based on the disruption of the claimant's business in Herzog Contracting Corporation v. A & S Construction Company, 751 P.2d 690 (N.M. 1988). Here the claimant subcontractor sought delay damages against the surety based on delays caused by the principal. The Court held that the surety was not liable for such damages, since "nothing is said [in the bond] about recovery for loss of profits; nothing is said about 'delay damages'". Herzog Contracting Corporation v. A & S Construction Company, 751 P.2d at 693.

The United States District Court for the District of Kansas reached a similar conclusion in Blinne Contracting v. Bobby Goins Enterprises, 715 F.Supp. 1044 (D.Kan. 1989). Here the plaintiff subcontractor sued a surety which issued a performance bond mandated by Kansas law. The statute provided that the bond was a source of recovery for all indebtedness "incurred for labor furnished, materials, equipment or supplies, used or consumed in connection with or in or about the construction of" the project. Blinne Contracting v. Bobby Goins Enterprises, 715 F.Supp. at 1046 quoting K.S.A. 60-111. The plaintiff sought damages from the surety which included lost profits resulting from the principal's alleged breach of contract. The District Court held that breach of contract damages, including lost profits, were not recoverable against the