surety under the bond. The Court reasoned that the language of the statute evidenced a legislative intent to limit the damages recoverable under the bond, and the claimant's remedy for breach of contract damages was against the bonded principal, not the surety:

> Had the state legislature intended profits lost or damages incurred as a result of a contract breach to be recoverable against the bond, it could have included these elements within the list of debts recoverable against the bond... Instead the legislature adopted a more narrow approach. Under [the bonding statute] only the value of goods and services actually expended in connection with the public improvements are recoverable against the bond. Additional claims, whether for lost profits or additional expenses incurred as a result of another's breach of the contract, do not form a basis for recovery against the performance bonds. These claims must instead be asserted through some other vehicle, such as a contract claim against the party responsible for the breach.

Blinne Contracting v. Bobby Goins Enterprises, 715 F.Supp. at 1046.

The United States District Court for the Southern District of Indiana held that a payment bond surety was not liable for lost profits and other consequential damages in Murdock & Sons Construction v. Goheen General Construction, Inc., 2002 U.S. Dist. LEXIS 2690 (S.D.Ind. 2002) reconsideration granted and vacated in part on other grounds 2003 U.S. Dist. LEXIS 22212 (S.D. Ind. 2003) (copies attached as Exhibit 4). Here the plaintiff subcontractor made claim against a surety which had issued a payment bond pursuant to Indiana Code § 4-13.6-7-6. Pursuant to this statute, the condition of the bond was that the contractor "pay all indebtedness that may accrue to any person on account of any labor or service performed or materials furnished in relation to the public work." Murdock & Sons Construction v. Goheen General Construction, Inc., 2002 U.S. Dist. LEXIS 2690, p. 5. The Plaintiff's claim against the surety included damages which it described as "lost profits". Id. pp. 10-11. The Court cited the "majority view ... that lost profits are not recoverable from a surety in an action on a Miller Act payment bond." Id. at 11. The Court concluded that the plaintiff could not recover lost profits from the surety, "whether on

other work [the plaintiff] was unable to obtain or on uncompleted work under the Subcontract." Id. The surety was not liable for "any claims for other consequential damages, damages for loss of bonding capacity, and damages for unjust enrichment[.]"

**B.     Steward may not rely upon Connecticut General Statutes § 42a-2-701 to recover on its business disruption and inefficiency claim against either National Union or White Oak, since § 42a-2-701, to the extent it is applicable, limits an aggrieved seller's remedies to "incidental damages", and Steward's business disruption and inefficiency claim seeks "consequential damages" which are not recoverable under § 42a-2-701**

To support its claim for business interruption and inefficiency damages, Steward may rely upon Connecticut General Statutes § 42a-2-701. This section provides that an aggrieved seller in a transaction covered by the Uniform Commercial Code may recover "incidental damages". Assuming that the Code is applicable to this case, it does not help Steward. Steward's claims for business disruption and inefficiency damages is a claim for "consequential damages", which is not a remedy available to Steward as an aggrieved seller.[4]

The Uniform Commercial Code allows an aggrieved seller to recover "incidental damages" from a buyer which has breached the contract. Code § 2-710 defines "incidental damages" as follows:

> Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach.

Nothing in § 42a-2-710 permits an aggrieved seller to recover "consequential damages". The "UCC makes a clear distinction between incidental and consequential damages." Gaynor

---

[4] The Court need not reach this issue if it concludes, as argued above, that National Union's liability under the bond and § 49-42 does not extend to a claimant's costs incurred on projects other than the bonded project.

22

Electric Company v. Hollander, 29 Conn. App. 865, 869 (1993) (citing Conn. Gen. Stat. §42a-2-715, which separately defines "consequential" and "incidental" damages). Code § 2-701 "entitles sellers to collect incidental, but not consequential damages." Stamtec v. Anson Stamping, 346 F.3d 651, 658 (6th Cir. 2003) (Tennessee law) citing Firwood Mfg. Co. v. Gen. Tire, Inc., 96 F.3d 163, 169 (6th Cir. 1996) (Michigan law). See also Nobs Chemical v. Koppers, 616 F.2d 212, 216 (5th Cir. 1980) (Texas law) Petroleo Brasileiro, S.A., Petrobas v. Ameropan Oil Corp., 372 F.Supp. 503, 508 (E.D.N.Y. 1974) (New York law); Atlantic Paper Box Co. v. Whitman's Chocolates, 844 F.Supp. 1038, 1046 (E.D.Pa. 1994) (Pennsylvania law).

The leading Uniform Commercial Code treatise has likewise concluded that § 2-710 limits the aggrieved seller's remedies to incidental, and not consequential, damages:

> The Code does not authorize the recovery of consequential damages by the seller. The concluding words of UCC § 2-710 "or otherwise resulting from the breach" is not an authorization to allow a seller to recover consequential damages for the buyer's breach.

Anderson, Uniform Commercial Code, § 2-710:5.

Steward's business disruption claim is essentially one for lost profits, i.e., profits which Steward would have made in its operations, but did no make as a result of cost overruns on other projects which Steward maintained in its facilities during the storage period. "Lost profits are a form of consequential damages" under the Code. Omega Engineering v. Eastman Kodak Company, 908 F.Supp. 1084, 1092 (D.Conn. 1995) (Dorsey, J.) citing White & Summers, Uniform Commercial Code § 10-4, at 518 (3d Ed. 1988) ("The most commonly litigated and doubtless the most sought after item of consequential damages is lost profits.") To the extent

23

WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. Counselors At Law
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

that Steward's damages are properly characterized as lost profits, they are consequential damages which are not recoverable under Conn. Gen. Stat. § 42a-2-710.

The losses claimed by Steward in its business disruption and inefficiency claims do not arise within the scope of the immediate contract between Steward and White Oak. These costs also do not reflect costs incurred to store or maintain the machinery. Instead, they are costs arising out of Steward's other contracts with third parties – i.e., its clients and customers. In essence, Steward's claim is for additional costs to complete contracts with third parties. These costs are not "incidental damages" because they do not arise directly from the contract between White Oak and Steward. Instead, they fit squarely within the concept of "consequential damages" as that term is understood in our jurisprudence, because they involve contractual arrangements between Steward and various third parties:

> While the distinction between the two [incidental and consequential damages] is not an obvious one, the Code makes plain that incidental damages are normally incurred when a buyer (or seller) repudiates the contract or wrongfully rejects the goods, causing the other to incur such expenses as transporting, storing, or reselling the goods. <u>On the other hand, consequential damages do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the non-breaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting.</u>

Petroleo Brasileiro, S.A., Petrobas v. Ameropan Oil Corp., 372 F.Supp. 503, 508 (E.D.N.Y. 1974) (emphasis added) citing Hadley v. Baxendale, 9 Exch. 341, 156 Eng. Reprint 145 (1854).

The United States District Court for the District of Pennsylvania found that damages of the type sought by Steward were "consequential damages" – and therefore not recoverable by an aggrieved seller – in Atlantic Box Company v. Whitman's Chocolates, 844 F.Supp. 1038 (E.D.Pa. 1994). Here the plaintiff was a seller of candy boxes. The defendant entered into an agreement to purchase boxes, and then breached the agreement by canceling it. The plaintiff

24

WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. *Counselors At Law*
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

claimed damages which included a claim of "lost business opportunity." Specifically, the plaintiff alleged that as a result of the defendant's failure to fulfill the contract, a potential buyer of the plaintiff withdrew its offer to purchase the company, which led to an "immediate and irreparable diminution of value" of the company. <u>Atlantic Box Company v. Whitman's Chocolates</u>, 844 F.Supp. at 1045. The court held that these were "consequential damages" which were not available to an aggrieved seller under the Uniform Commercial Code. The court reasoned that the claimed losses related to a transaction with a third-party (the potential buyer) and did "arise directly within the scope of the buyer-seller transaction." <u>Id.</u> at 1046. Here, as in <u>Atlantic Box Company v. Whitman's Chocolates,</u> Steward is seeking to recover damages relating to transactions with third parties – its customers and clients. These damages do not arise directly within the contract between Steward and White Oak. Instead, they represent the alleged consequence of White Oak's alleged failure to take delivery of the machinery. These are clearly "consequential damages", which are not recoverable by Steward under § 42-2-710. <u>See also Petroleo Brasileiro, S.A., Petrobas v. Ameropan Oil Corp</u>, 503, 508 (E.D.N.Y. 1974) (banking penalties imposed on seller, caused by buyer's failure to make payment, held to be "consequential damages" not recoverable under § 2-710 of New York's version of the Uniform Commercial Code).

The United States Court of Appeals for the Sixth Circuit reached a similar conclusion applying Tennessee law in <u>Stamtec v. Anson Stamping Company</u>, 346 F.3d 651 (6th Cir. 2003). Here the buyer contracted to purchase certain machinery from the seller. The seller entered into a separate agreement with a manufacturer to obtain the machinery which it would sell to the buyer. The buyer breached its contract with the seller by failing to make payment. As a consequence of

25

this breach, the seller was unable to pay for – or take delivery of – the machinery from the manufacturer. The manufacturer imposed certain charges on the seller, including a "salvage loss charge". The seller paid this charge, and then sought recovery of it from the buyer. The court held that the "salvage loss charge" paid by the seller to a third party – i.e., the manufacturer – was an element of "consequential damages" not recoverable under § 2-710 of the Uniform Commercial Code, because the imposition of the charge was "a consequence of [the buyer's] breach, rather than a direct result of [the buyer's] breach." Stamtec v. Anson Stamping Company, 346 F.3d at 657. The Court also concluded that the interest charges paid by the seller to the manufacturer were "consequential damages" and were not recoverable under § 2-710. Id. at 659-660.[5]

C. **As A Matter of Law Steward Cannot Recover on Its "Storage Fees" Claim Because National Union is Not Liable Under its Payment Bond for a Claimant's Fictitious Unrealized Costs, and Conn. Gen. Stat. § 42a-2-710, to the Extent that it is**

---

[5] The Second Circuit Court of Appeals has held that New York's version of § 2-710 allows an aggrieved seller to recover interest payments to third parties as an element of "incidental damages". See Intermeat v. American Poultry Incorporated, 575 F.2d 1017 (2d Cir. 1978); Bulk Oil v. Sun Oil Trading Company, 697 F.2d 481 (2d Cir. 1983). These cases are not controlling and are distinguishable in the following respects. First, the Second Circuit applies New York law and relies principally upon the New York Court of Appeals decision in Neri v. Retail Marine Corp., 30 N.Y.2d 393, 285 N.E.2d 311 (1972). Here this Court must apply Connecticut law, which recognizes a clear distinction between "incidental" and "consequential" damages under the Code. Gaynor Electric Company v. Hollander, 29 Conn. App. 865, 869 (1993). Second, a finance or interest charge to a bank represents a direct cost caused by the breach and is incurred "incidental to the breach". Intermeat v. American Poultry Incorporated, 575 F.2d at 1024. In contrast, Steward's business disruption claim consists of indirect costs arising out of various contracts between Steward and its other customers. In Intermeat v. American Poultry Incorporated the Second Circuit noted the distinction between "financing charges incurred incidental to the breach, as distinguished from consequential damages resulting from relations with third parties." Intermeat v. American Poultry Incorporated, 575 F.2d at 1024. Even under New York's more expansive view of the term "incidental damages", Steward's claims for lost profits due to cost overruns on other projects would be deemed a "consequential damage" which is not recoverable by an aggrieved seller under § 2-710.

**Applicable, Limits Steward's Recovery to Expenses Actually Incurred as A Result of White Oak's Breach of Contract**

Steward's claim against National Union includes $2,111,017.23 for so-called "storage fees" related to the storage of the machinery. Steward did not actually incur these fees as actual out-of-pocket expenses. (Indeed, for a majority of the so-called "storage period", the largest pieces of the machinery where "stored" in Steward's parking lot at its facilities in Birmingham). Rather, Steward arrived at this amount by (they contend) contacting Birmingham-area storage facilities, asking what the cost would have been for storing the machinery at these facilities, and calculating a rate based on what they were told. Steward claims that that the rates quoted to it were $8 per square foot per month for inside storage and $5 per square foot per month for outside storage. Steward then took these rates, applied them to the square footage which it claims was required for its storage of the materials, and then calculated an amount which it has included in its claim. In this fashion Steward created a claim in the amount of $3,051,646.79. Steward did not actually pay any of these fees to anyone. In fact, the actual costs incurred by Steward in the storage of the machinery are claimed to be $431,669.00.

Steward's "storage fee" claim is not recoverable against National Union as a matter of law for the following reasons: (1) the contract between White Oak and Steward did not obligate White Oak to pay a "storage fee" to Steward; (2) Steward's only theory for recovering these "fees" is based on a claim for breach of contract damages under Connecticut General Statutes § 42a-2-710, and this statute limits their recovery to costs and expenses actually incurred; (3) and

27

WOLF, HOROWITZ, ETLINGER, & CASE L.L.C. *Counselors At Law*
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

National Union as surety is not liable for breach of contract damages under its bond, and is not liable for costs which Steward did not actually incur in the prosecution of the work.[6]

White Oak's payment obligation under its purchase order contract with Steward was to pay the stipulated sum of $7,553,000 for the production and delivery of the machinery. See Purchase Order date August 8, 1994, attached as Exhibit 1 to Zito Affidavit. Nothing in the Purchase Order obligated White Oak to pay for the storage of the machinery. The Purchase Order contained no provision allowing for an increase in the contract price based on Steward's storage of the machinery. Contracts must be construed "to effectuate the intent of the parties, which is determined from the language used interpreted in light of the situation of the parties and the circumstances connected with the transaction ... The intent of the parties is to be ascertained by a fair and reasonable construction of the written words and ... the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract ... Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." Goldberg v. Hartford Fire Insurance Company, 269 Conn. 550, 559 (2004). Here, the Purchase Order clearly limited White Oak's payment obligation to the stipulated sum of $7,553,000, and did not extend to any storage fees now asserted by Steward. "As a general matter, a surety's liability is defined by the liability of the underlying contract." Morganti National Inc. v. Petri Mechanical Co., Inc., 2004 U.S.Dist. LEXIS 8659, p. 32 (D.Conn. 2004) (Underhill, J.) (copy attached as Exhibit 5). As the

---

[6] There are other legal and factual reasons why Steward cannot recover on this claim. These issues will be briefed and addressed separately at trial by National Union.

28

WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. *Counselors At Law*
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

underlying Purchase Order contract did not obligate White Oak to pay any storage fees to Steward, National Union cannot be liable for these fees.

Steward cannot rely upon any alleged modification or oral agreement by White Oak as a basis to recover these fictitious "storage fees". The Purchase Order subcontract prohibits oral agreements, and provides that any modification must be in writing and signed by both parties. Page 7, paragraph 1 of the purchase order provides:

> THERE ARE NO TERMS, CONDITIONS, UNDERSTANDINGS, OR AGREEMENTS BETWEEN BUYER AND SELLER OTHER THAN THOSE STATED HEREIN ... NO TERMS AND CONDITIONS IN ANY WAY ALTERING OR MODIFYING THE PROVISIONS HEREOF SHALL BE BINDING UPON BUYER OR SELLER UNLESS IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF BUYER AND SELLER.

See Purchase Order, Exhibit 1 to Zito Affidavit. Connecticut courts routinely enforce integration clauses of this type where, as here, they are entered into between two sophisticated commercial entities. Tallmadge Bros. v. Iroquois Gas Transmission System, 252 Conn. 479, 502-03, 746 A.2d 277 (2000). The Purchase Order was never modified in writing to require White Oak to pay the "storage fees" charged by Steward, nor was there any agreement between White Oak and Steward with regard to the rate to be imposed by Steward.

The "storage fees" also are not a recoverable element of cost under the payment bond. National Union's obligation under the bond is to pay for "all materials and labor used or employed in the execution of" the project. See bond, exhibit 2 to Zito Affidavit. The "storage fees" sought by Steward do not represent material or labor costs employed in the execution of the contract. These fees were never actually incurred by Steward. Steward cannot prove any actual expenses to support this claim, except for the $431,669 in costs which it is claiming. Miller Act cases recognizing a claimant's entitlement to certain "delay damages" from a payment bond

surety have consistently held that the claimant's recovery is limited to costs and expenses actually incurred by the claimant in completing the bonded contract. <u>United States ex rel TMS Mechanical v. Millers Mutual Fire Insurance Co. of Texas</u>, 942 F.2d 946, 952 (5th Cir. 1991) (Miller Act surety's liability for delay damages incurred by subcontractor limited to "additional or increased costs actually expended in furnishing the labor or materials in the prosecution of the work provided for the work and attributable to the delay, or the "subcontractor's 'out-of-pocket costs of delay'"); <u>United States ex rel Mariana v. Piracci</u>, 405 F.Supp. 904, 907 (D.C. 1975) (Miller Act payment bond surety's liability for delay damages limited to "actual expenditures for labor or material utilized in the performance of the subcontract"); <u>United States ex rel Lochridge-Priest, Inc.v. Con-Real Support Group, Inc.</u>, 950 F.2d 284, 287 (5th Cir. 1992) (while Miller Act payment bond surety may be liable for certain delay damages incurred by the claimant, the Court must "carefully limit the recovery to costs actually expended in furnishing the labor or material in the prosecution of the work provided for in the contract."). <u>Mai Steel Service, Inc. v. Blake Construction Company</u>, 981 F.2d 414, 418 (9th Cir. 1992) (while Miller Act payment bond surety may be liable for certain delay damages, its liability limited to the claimant's "out-of-pocket labor and material costs incurred in completing the [bonded] contracts"; however, surety's liability does not extend to lost profits as "a claim for lost profits does not involve actual outlay and thus 'falls outside both the letter and the spirit of the [Miller] Act."); <u>United States ex rel Pertun Construction Company v. Harvesters Group, Inc.</u>, 918 F.2d 915, 918-19 (11th Cir. 1990) (Miller Act payment bond surety liable for delay damages in the form of "actual expenditures for labor or materials utilized in the performance of the subcontract", and not lost profits); <u>Consolidated Electrical & Mechanicals, Inc. v. Biggs General Contracting, Inc.</u>, 167 F.3d 432,

30
WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. *Counselors At Law*
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488