436 (8th Cir. 1999) (surety's liability is limited to costs "expended in furnishing labor or material in the prosecution of the work provided for" in the bonded job)

Allowing Steward $2,111,017.23 in "storage fees" would violate basic principles of law regarding the measure of damages in civil actions. The general rule in breach of contract cases is that the award of damages "is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed." <u>Ambrogio v. Beaver Road Associates</u>, 267 Conn. 148, 155 (2003). The Uniform Commercial Code, upon which Steward apparently relies as a basis to recover these storage fees, similarly provides that an award of damages cannot be windfall for the plaintiff:

> The remedies provided by this title shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special nor penal damages may be had except as specifically provided in this title or by other law.

Conn. Gen. Stat. § 42a-1-106(1). Here, Steward's contract with White Oak did not obligate White Oak to pay the storage fees claimed by Steward. Awarding Steward $2,111,017.23 would put Steward in a substantially better position that it would have been in had White Oak not (allegedly) breached the contract. This is particularly so because Steward's alleged actual costs incurred in storing the machinery were only $431,669.00.

Steward's only theory for recovery of these "storage fees" appears to be as an element of damage flowing from a breach of contract claim against White Oak. Assuming arguendo that White Oak was ever in material breach of the Purchase Order, Steward still cannot recover the fictitious "storage fees" against National Union. A payment bond surety is not liable under § 49-42 for breach of contract damages caused by the bonded contractor. <u>See</u>, <u>Blakeslee</u>, 239 Conn. at

31

WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. *Counselors At Law*
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

723 (rejecting argument by claimant that surety's liability under payment bond extends to all damages caused by the principal's breach of contract).

Steward appears to be basing its claim for storage fees on the Uniform Commercial Code, Connecticut General Statutes § 42a-2-710, which provides that an aggrieved seller is entitled to certain "incidental damages" caused by the buyer's breach. Even if White Oak's non-acceptance of the machinery was a breach of the contract, the Uniform Commercial Code precludes recovery of the "storage fees" claimed by Steward because they were not costs actually incurred by Steward. General Statutes § 42a-2-710 permits recovery only of "incidental damages" consisting of costs actually "incurred" by the seller. Here Steward did not incur as cost or expense any of the $3,051,646.79 which it is claiming as a "fee" for storing the machinery. Rather the claim consists of fictitious costs which Steward allegedly *would have incurred, but did not*. The Uniform Commercial Code does not allow for the recovery of costs or damages not actually incurred by a party. The plain language of the statute demonstrates that only actual expenses incurred are recoverable:

> Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions *incurred* in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach.

Connecticut General Statutes § 42a-2-710 (emphasis added).

The Official Comments to § 42a-2-710 make clear that a seller's "incidental damages" are limited to charges and expenses *actually incurred* by the seller:

> Purposes: To authorize reimbursement of the seller for expenses reasonably *incurred* by him as a result of the buyer's breach. The section sets forth the principal normal and necessary additional elements of damages flowing from the breach but intends to allow all commercially reasonable *expenditures made* by the seller.

32

See Official Comments, § 42a-2-710 (emphasis added).

The leading treatise construing the Uniform Commercial Code further confirms that a seller's incidental damages are limited to actual expenditures. See Anderson, Uniform Commercial Code, § 2-710:8 ("Incidental expenses under the Code are limited to out-of-pocket expenses. A seller is entitled to recover 'any commercially reasonable expense to which he or she has been put by the buyer's breach.'")

The Appellate Division of the New York Supreme Court rejected a strikingly similar claim for fictitious storage chares in Ernst Steel v. Horn Construction, 104 A.D.2d 55, 481 N.Y.S.2d 833 (1984) amended by 486 N.Y.S.2d 1022 (4th Dep't 1985) (hereinafter "Ernst Steel"). Here the plaintiff was a steel supplier which claimed that it was damaged as a result of the defendant's delay in accepting the steel. Like Steward in this case, the plaintiff's claim included the actual expenses associated with the extra handling and movement of the steel while in storage, together with a "storage charge." Like Steward in this case, the plaintiff in Ernst Steel did not actually incur the "storage charge" as an out-of-pocket expense; it calculated the "storage charge" based on rates which would have been charged by private storage facilities. Ernst Steel, 104 A.D.2d at 64. The plaintiff argued that both the handling charges and the "storage charges" were recoverable as "incidental damages" under UCC § 2-710. The Court held that the plaintiff was not entitled to recover the "storage charges" because "incidental damages" under the Uniform Commercial Code "are limited to out-of-pocket expenses" incurred by the buyer, and do not include storage fees which were never paid by the seller. Id. The Court noted that the purpose of the "incidental damages" provision of § 2-710 was to "only to put the seller in as good a position as performance would have done[.]" Id. Since the plaintiff was in fact awarded

damages for the extra handling costs incurred in the movement and storage of the machinery, the purpose of § 2-710 was satisfied, and the plaintiff was not entitled to recover anything further for charges claimed but not actually incurred.

Here, as in <u>Ernst Steel</u>, Steward is seeking recovery for both the actual costs of storage and additional "storage fees" which it never actually incurred or paid. Here, as in <u>Ernst Steel</u>, Steward is calculating its "storage fee" claim based on charges which it contends it would have incurred had it sent the machinery to private storage. Here, as in <u>Ernst Steel</u>, Steward cannot recover on the "storage fee" component of its claim since § 42a-2-710 limits "incidental damages" to damages actually incurred as a result of the breach. The purpose of § 42a-2-710 is to place Steward in the position it would have been in but for White Oak's alleged breach of contract. The purpose of the statute is fulfilled by awarding its actual storage costs allegedly incurred (assuming that it can prove these charges, and further assuming that White Oak was in material breach of the contract). Allowing Steward $2,111,017.23 for "storage fees" violates the statute and undermines the purpose of the Code and basic principles of contract law by placing Steward in a better position than it would have been in but for the alleged breach by White Oak.

Other courts construing § 2-710 of the Code have similarly held that the "incidental damages" recoverable by the seller are limited to the seller's provable actual expenses. See <u>New England Dairies v. Dairy Mart Convenience Stores</u>, 2002 U.S. Dist. LEXIS 2596, p. 41 (D.Conn. 2002) (Droney, J.) (copy attached as Exhibit 6) (plaintiff could not recover certain incidental damages under § 42a-2-710 because it did not prove that it "actually incurred expenses in these amounts"). <u>Sack v. Lawton</u>, 2003 U.S. Dist. LEXIS 12279, 10 f.n. 4 (S.D.N.Y. 2003) (copy attached as Exhibit 7) (incidental damages under § 2-710 in the New York commercial code

"limited to out-of-pocket expenses"); <u>Great Western Sugar Company v. Mrs. Allison's Cookie Co.</u>, 563 F.Supp. 430, 433 (E.D. Mo. 1983) (incidental damages under § 2-710 in Missouri commercial code "confined to plaintiff's expenses incurred in the care and custody of these goods …. Plaintiff's evidence must reflect such expenses accordingly."); <u>Masters Machine Co. v. Brookfield Athletic Shoe Co.</u>, 663 F.Supp. 439, 442 (D. Maine 1987) (incidental damages under § 2-710 in Maine does not include "hypothetical charges" asserted by the seller); Cf <u>Bennett v. S. Blumenthal & Co.</u>, 113 Conn. 223, 230 (1931) (aggrieved seller entitled to damages reflecting amounts paid for storage of the goods after the buyer's breach).[7]

While an aggrieved seller may recover storage costs under the Code, it must prove that the costs were actually incurred. See <u>Stamtec v. Anson Stamping</u>, 346 F.3d 651 (6th Cir. 2003). Here the aggrieved seller actually <u>paid</u> $800,000 as a storage fee to the manufacturer of machinery. In the seller's action against the buyer, it sought recovery of this payment as an item of "incidental damage" under the Code. The Sixth Circuit Court of Appeals held that the

---

[7] The Second Circuit Court of Appeals recently confirmed that "incidental damages" under § 42a-2-710 requires proof of actual expenses incurred in <u>Tuttle v. Equifax Check</u>, 190 F.3d 9 (2d Cir. 1999). Here the plaintiff passed a bad check to a hardware store. A sign at the counter of the store said that a $20 service charge would be imposed on returned checks. The hardware store assigned its right to collect the check to Equifax. Equifax attempted to collect the funds, as well as the $20 service charge for costs incurred in the collection of the check. The plaintiff claimed that the imposition of the charge violated the Fair Debt Collection Act. The defendant argued that the charge was recoverable as an "incidental damage" under § 42a-2-710. The Second Circuit Court of Appeals found that the charge was recoverable based on Equifax's evidence that its actual check collection costs were slightly in excess of $20 per dishonored check. Therefore the $20 service charge "constitutes incidental damages to the extent that it offsets the collection expenses arising from the dishonored check." <u>Tuttle v. Equifax Check</u>, 190 F.3d at 15. Here, Steward's actual costs incurred in storing the machinery are claimed to be just $431,669.00. Plainly a storage charge of $2,111,017.23 cannot be allowed where it is so grossly disproportionately greater than the alleged actual costs of storage. Moreover, in <u>Tuttle</u> the plaintiff had notice of the $20 service charge and consented to it. Steward's Purchase Order included no provision for the payment of a storage fee, and White Oak did not consent to it.

aggrieved seller could have recovered this cost, if it had proven that it was commercially reasonable. However the seller could not prove that the storage fee which it paid was commercially reasonable, and therefore it could not recover. Here, since Steward never paid anyone the $3,051,646.79 which it is claiming as a storage "fee", it cannot recover this as an item of "incidental damage" under § 42a-2-710.

**D.    The Proper Measure of Damages for Steward's Claim Against National Union Under the Bond Is Steward's Actual Additional Costs Incurred In Storing and Maintaining the Machinery**

Steward claims that it incurred $431,669 in additional labor and material costs to store, move and maintain the machinery. These costs (if proved) represent the proper measure of recovery against National Union for any claim of "delay damages" sustained by Steward, since they reflect actual labor and material costs incurred in the prosecution of the bonded project. It remains to be seen whether Steward can prove up these costs. Based on National Union's review of the timecards provided in support of this claim, some of the labor charges appear to reflect base contract work (i.e., work which was required under the contract itself.)

**E.    Steward's Claim For Interest Accruing After August 24, 2000 Is Precluded By The Parties' August 24, 2000 Agreement**

Steward's claims include substantial amounts of interest and service charges accruing after August 24, 2000. All of Steward's claims for service charges and interest accruing after August 24, 2000 are barred by the agreement reached between the parties on that date. By this Agreement Steward contractually agreed that it would not seek damages accruing after the date of the Agreement. Specifically, paragraph 12 provides:

> Steward National and White Oak each agrees that it will not seek to recover in the Bond Action any damages accruing after the date of this Agreement.

36

WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. *Counselors At Law*
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

See August 24, 2000 Agreement, ¶12, attached as Exhibit 3 to Zito Affidavit. This provision is a contractual agreement by Steward that it would not seek damages accruing after August 24, 2000. By seeking damages accruing after August 24, 2000 Steward is in violation of the Agreement.

The August 24, 2000 Agreement is a contract between the parties which must be construed in accordance with the principles of contract law. It must be construed "to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction ... The intent of the parties is to be ascertained by a fair and reasonable construction of the written words and language ... the language used must be accorded its common, natural and ordinary meaning and usage where it can be sensibly applied to the contract ... Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." Goldberg v. Hartford Fire Insurance Company, 269 Conn. 550, 558 (2004).

Pursuant to the Agreement, Steward may neither seek nor recover "damages accruing" after August 24, 2000. Steward's claim for "contractual interest" based on the "service charge" provision of the Purchase Order clearly constitutes "damages accruing", as these terms are commonly understood. State and federal courts applying Connecticut law have consistently characterized the term "damages" to include an award of prejudgment interest. Maloney v. PCRE, 68 Conn. App. 727, 754-55 (2002) ("[t]he trier of fact may award prejudgment interest, as an element of damages, for the detention of money after it becomes payable if equitable considerations deem that such interest is warranted."); Paulus v. Lasala, 56 Conn.App. 139, 147 (1999) ("[C]onnecticut law establishes that prejudgment interest is to be awarded if, in the

discretion of the trier of fact, equitable considerations deem that it is warranted ... If interest is due, it is an element of damages."); Nor'easter Group v. Colossale Concrete, 207 Conn. 468, 482 (1988) ("[t]he allowance of interest as an element of damages is primarily an equitable determination and a matter within the discretion of the trial court"); Connecticut General Statutes § 37-3a(a) ("[I]nterest at the rate of ten percent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under Chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable."); The Neptune Group v. MKT, Inc., 205 F.R.D. 81, 88 (D.Conn. 2002) (Droney, J.) ("interest is an element of [plaintiff's] damages").

The "service charge" provision which Steward seeks to enforce is, in essence, a liquidated damages provision. Monies claimed due by Steward under the provision clearly qualify as "damages" under any interpretation of the term. See Tuttle v. Equifax Check, 190 F.3d 9 (2d Cir. 1999) ($20 "service charge" imposed in connection with collection of a bad check held to be an item of "incidental damage" under Connecticut law). Whether the provision is labeled a "liquidated damages" clause, or "interest" provision, is immaterial since both terms are contemplated as an element of "damages" under Connecticut law. Blythe v. Blue Moon Trucking, 2000 Conn.Super. LEXIS 1902, p. 4 (Levin, J.) (2000) (copy attached as Exhibit 8) ("service charge" set forth in contract was "synonymous with an interest charge."); Christian Brothers Inc. v. South Windsor Arena, Inc., 7 Conn.App. 648, 651-52 (1986) (it is "fundamental that '[i]nterest by our law is allowed on the ground of some contract express or implied to pay it, or as damage for the breach of some contract, or the violation of some duty.'").

WOLF, HOROWITZ, ETLINGER, & CASE L.L.C. Counselors At Law
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

Steward may argue that the term "damages accruing" was intended to apply only to the additional actual expenses and costs accruing after August 24, 2000, and not interest or service charges. This argument has no support in law or fact. As discussed above, the common and ordinary meaning of the term "damages" includes "interest". Moreover, the use of the term "accruing" in conjunction with the term "damages" provides compelling evidence that the parties intended that the term "damages" would include interest. It is commonly known and understood that interest "accrues". See Webster's Ninth New Collegiate Dictionary, p. 50 (term "accrue" defined as "to accumulate or be added periodically {interest accrues on a daily basis}"); Black's Law Dictionary, Sixth Edition ("Accrued interest" defined as "Interest that has been earned but is not yet received nor receivable"); Connecticut General Statutes § 37-3c (interest in condemnation cases "shall accrue from the date of taking to the date of payment"). Had the parties intended to exclude "interest", they would surely have used a term other than "accruing". For example, the parties could have used the term "damages incurred" if they had intended to limit the provision to actual costs and expenses.

For all of the above reasons, Steward cannot recover on its claims for prejudgment interest or service charges accruing after August 24, 2000.[8]

---

[8] There are numerous other grounds to limit or deny Steward's claims for prejudgment interest and service charges. National Union does not address these grounds herein since most of these other grounds involve factual disputes which cannot be resolved prior to trial.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

BY _____
Gary M. Case
Wolf, Horowitz, Etlinger & Case, LLC
241 Main Street
Hartford, CT 06106-1852
(860) 724-6667
ct09610

### CERTIFICATION

    This is to certify that a true copy of the foregoing document was mailed via first class postage, prepaid, this 16th day of December, 2004, to all counsel of record.

William Egan
Barbara Crowley
Egan & Crowley
234 Church Street
New Haven, CT 06510


Jane I. Milas
Garcia & Milas, P.C.
44 Trumbull Street
New Haven, CT 06510
Phone – (203)773-3824
Fax – (203) 782-2312



Gary M. Case

41914

WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. Counselors At Law
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488