THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

STEWARD MACHINE CO, INC.

V.

WHITE OAK CORPORATION

AND

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.

CIVIL ACTION NO.

3:00CV00834(SRU)

JANUARY 25, 2005

AFFIDAVIT OF
J. LESTER ALEXANDER, III, IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT

STATE OF ALABAMA    )
                    )  ss.   BIRMINGHAM    JANUARY 25, 2005
COUNTY OF JEFFERSON )

I, J. Lester Alexander, III, being duly sworn, state as follows:

I am over the age of eighteen (18) years and believe in and understand the obligations of an oath.

2. At all times relevant, I have been, and still am, a Certified Public Accountant and the President and Managing Principal of AEA Group, LLC, a consulting firm specializing in accounting, economic and appraisal consulting.

3. I have been retained and disclosed as an expert witness for the Plaintiff Steward Machine Company ("Steward'); and in that capacity prepared a report dated September 15, 2003, and a supplemental report dated September 2, 2004, detailing my

expert opinion as to the economic costs incurred by Steward as a result of the storage of the White Oak machinery. Copies of the narrative sections of both reports are attached hereto as Exhibits A and B.

4. The methodology I used to determine damages associated with the storage of White Oak machinery was to establish a benchmark of normal operating efficiencies of Steward when not affected by the presence of the White Oak machinery.

5. This benchmark was used to determine the number of excess labor hours required of Steward while storing the White Oak machinery.

6. Steward's accounting records were used to determine the actual cost associated with the excess labor hours.

7. I investigated the causes of excess labor hours and eliminated or mitigated the excess labor hours that could be attributable to causes other than White Oak. Examples of causes that are not attributable to White Oak are jobs whose scope materially increased (more than 15%) and jobs or portions of jobs that were fabricated elsewhere. These items were removed from the damage calculation because they would have skewed the results.

8. Using this method, the total costs incurred by Steward as a result of the storage of the White Oak machinery are:

    A. Economic Costs incurred by the Fabrication and Machine Shops

| | | |
|---|---|---|
| 1) | Variable costs based on labor hours | $1,160,202 |
| 2) | Fixed shop cost | $ 262,656 |
| 3) | Overhead cost | $ 300,246 |

|   |   |   |
|---|---|---|
|   | Total Economic Costs | $1,723,104 |
| 4) | Reasonable Profit margin | $ 172,447 |
|   | Total costs and profit | $1,895,551 |

B. Economic Costs from Steward's Storage Job Record

|   |   |   |
|---|---|---|
| 1) | Direct Material Cost | $ 13,580 |
| 2) | Direct Subcontractor Cost | $ 6,405 |
|   | Total Materials & Subcontract | $ 19,985 |
| 3) | Labor costs | $ 119,580 |
| 4) | Variable costs based on labor hours | $ 292,134 |
|   | Total | $ 431,699 |

The costs set forth above are contained in Schedules A and AA to my supplemental report. Copies of those schedules are attached hereto as Exhibits C and D.

9.   The $1,895,551 of total costs incurred by the fabrication and machine shops, together with the profit on those costs, is what has been referred to in the course of discovery as the "business interruption and inefficiency claim".

10.   The $431,699 for the economic costs captured by Steward on its storage job record is what has been referred to during the course of discovery, as the "costs of storage". There are no labor hours recorded in Steward's storage job record for the entire year of 1997 or for the first three and one-half months of 1998.

11   The total of these figures, $2,327,250 is the total economic cost incurred by Steward as a result of the storage of the White Oak machinery.

3

12. There is no other material approximate cause for these damages other than the storage of the White Oak machinery.

Dated at Birmingham, Alabama, this 25th day of January, 2005.

_____
J. Lester Alexander, III

Subscribed and sworn to before
me this 25th day of January, 2005.

_____
Notary Public

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Mar 18, 2008
BONDED THRU NOTARY PUBLIC UNDERWRITERS

# Expert Report of J. Lester Alexander, III

## Steward Machine Co., Inc. ("Steward") v. White Oak Corporation ("White Oak") and National Union Fire Insurance Company of Pittsburgh, PA.

As of September 15, 2003

This letter and the attached appendices are the report of my findings to date in the above-referenced matter. The report summarizes information that was considered by myself and others working under my direction. This report is to be used solely in connection with the proceedings related to the above referenced matter and should not be used for any other purpose.

I am a certified public accountant and have approximately twenty-four years of professional experience. I am a certified fraud examiner, and I hold an accounting degree from the University of Alabama. My resume and testimony experience are attached as Appendix AD.

## SCOPE

Steward's counsel engaged me as an expert witness in connection with the above-referenced matter. During the engagement we reviewed business and financial records of Steward, including job cost reports, management reports, payroll records, percentage of completion reports, job completion reports, lookback schedules, and Steward's corporate financial statements and underlying ledger detail. In addition, we reviewed correspondence between Steward and the Defense Contract Audit Agency (DCAA) and certain of Steward's customers involving government contracts and information contained in certain bid files maintained by Steward's various project managers. We conducted interviews with members of Steward management and other employees, including its active project managers. Finally, we read the deposition testimony of Jerry Shivers and the affidavit of Whitney DeBardeleben. Included within this report are annotated appendices, which are provided in support of my opinions and bases thereof.

See Appendix AE for a complete listing of the documents and information considered.

We were asked to determine the economic costs incurred by Steward, a custom manufacturing company, due to the labor inefficiency that resulted from the unplanned storage in its fabrication shop of certain machinery specially manufactured for White Oak (the "White Oak Project") during the period from September, 1996 through November, 2000 (the "storage period"). "Economic cost", as used herein, is defined as the costs that can reasonably be determined to have been incurred as a result of the labor inefficiency resulting from the business interruption caused by White Oak.

The storage of the White Oak Project created enormous logistical limitations within Steward's fabrication shop due to the size and configuration of the White Oak machinery, impairing Steward's ability to produce at normal operating efficiency levels (see Appendix Z), and no practical alternative storage facility could be located. This event is

1

Exhibit A

referred to herein as "business interruption". Steward's machine shop also suffered labor inefficiency during the storage period as a result of the business interruption.

In addition, we were asked to determine the economic costs incurred to properly maintain the White Oak Project during the storage period (hereafter referred to as "maintenance"), including costs incurred to temporarily relocate the White Oak Project to mitigate additional business interruption that would have otherwise occurred. These maintenance costs were necessary to preserve the precise tolerances of the White Oak Project machinery during the storage period and consisted primarily of lubricating and rotating the moving parts of the equipment.

As a result of our work, I am of the following opinions:

- Steward's storage of the White Oak Project led to decreased labor efficiency of 44.0 percent in its fabrication shop during the storage period. As a result, Steward incurred economic costs of $1,908,712 (plus pre-judgment interest of $739,053 computed through the date of this report of September 15, 2003) during the storage period (Appendix A).

- Steward's storage of the White Oak Project led to decreased efficiency of 17.9 percent in its machine shop during the storage period. As a result, Steward incurred economic costs of $575,112 (plus pre-judgment interest of $222,683 computed through the date of this report of September 15, 2003) during the storage period (Appendix A).

- Further, I am of the opinion that Steward incurred economic costs of $431,669 (plus prejudgment interest of $167,142 computed through the date of this report of September 15, 2003) related to the required maintenance of the White Oak Project during the storage period (Appendix AA).

The above economic losses total $2,915,493 (plus prejudgment interest of $1,128,878 computed through the date of this report), are not speculative and were determined with a reasonable degree of certainty.

Following is a description of the methodology used to arrive at my determinations.

## BUSINESS INTERRUPTION

The calculation of economic cost arising from the business interruption was based upon the projected inefficient hours expended by Steward and Steward's average production costs per hour, increased for the application of selling, general, and administrative expenses ("overhead"), in accordance with DCAA standards, plus a reasonable profit margin. The individual components of the calculation were derived as follows:

### Time Studies and Labor Inefficiency Measurements

Actual labor hours expended were compared to budgeted hours planned for a sample of manufacturing orders ("jobs") requiring fabrication produced during the period

2

commencing with the construction of the White Oak Project through December 31, 2002 (the "sample period"). Actual and budgeted fabrication hours were compared for those jobs evaluated (the "fabrication time study" – see Appendix X). For those same jobs evaluated in the fabrication time study, the actual hours expended in the machine shop were compared to the planned machine shop hours (the "machine shop time study" – see Appendix Y). Jobs evaluated in the time studies were segregated between those requiring greater levels of fabrication (more than 1,000 hours) and those requiring less than 1,000 hours of fabrication ("slighter fabrication" jobs). Jobs were excluded from inclusion in the time studies' inefficiency measurements for, among other reasons, where no planned fabrication could be readily supported and significant differences existed between the planned selling price and ultimate selling price (impacted by change orders, etc.).

The sample period was segregated into three phases, the period of construction of the White Oak Project (the "construction period") measured as years 1995 and 1996, the storage period measured as years 1997 through 2000, and the period immediately following the shipment of the White Oak Project through December 31, 2002 (the "lookback period") measured as years 2001 and 2002. From the results of both the fabrication time study (see Appendix H) and the machine shop time study (see Appendix I), labor inefficiency was measured for the construction, storage, and lookback periods as well as efficiency improvements realized during the lookback period (as compared to the storage period). Inefficiency measurements were applied to budgeted labor hours expended for jobs produced during the storage period that were included in the time studies to derive inefficient labor hours expended for fabrication (see Appendix F) and machining (see Appendix G).

In addition to the calculation of inefficient hours expended for those jobs included in the time studies, estimates were made of the inefficient portion of fabrication and machine hours expended during the storage period for jobs not considered in the fabrication and machine shop time studies (the "additional fabrication" jobs). The additional fabrication jobs consist of numerous other fabrication jobs whose fabrication levels more closely resemble that of the slighter fabrication jobs; therefore, the inefficiency rate for the slighter fabrication jobs was applied to the additional fabrication hours to derive the inefficient hours expended (see Appendix J). Inefficiency experienced in the machine shop for the additional fabrication jobs was measured in a similar manner (see Appendices K and L).

Sixty-five and eighty-one jobs were included in the fabrication and machine shop time studies, respectively, all produced during the sample period. The total fabrication hours invested in the jobs included in the fabrication time study constituted the majority of all fabrication hours expended during the approximate seven-year sample period (see Appendix H).

**Cost Analysis**

Variable Production Costs

Variable production costs incurred during the storage period were measured on the basis of cost per productive labor hour for both the fabrication and machine shops (Appendices

(Appendices M and N) based on total allowable shop production costs incurred (see Appendix O), total allowable fabrication shop costs incurred (see Appendix P), and total productive hours expended (see Appendix W). "Variable production costs", as used herein, are defined as those operating costs that vary directly, sometimes proportionately, with fluctuations in production volume, facility utilization, or other measures of activity. Variable production costs not previously apportioned between the fabrication and machine shops by Steward were allocated based on comparative employee headcount, payroll cost, and previously allocated hourly costs in the fabrication and machine shop operations (see Appendices Q, R, and S).

Fixed Production Costs

Fixed production costs used to calculate economic costs incurred were measured on the basis of cost per productive labor hour from actual fixed shop costs incurred and productive labor hours expended during the year ended December 31, 2000 (the final year of the storage period). The measurement of fixed costs incurred during the Year 2000 (see Appendix T) was derived from an assessment of Steward's production cost components as variable or fixed (see Appendix U). "Fixed production costs", as used herein, are defined as operating costs that do not vary with business volume.

Overhead Application Rate

Steward's overhead application rate was measured based on the relationship of total selling, general, and administrative costs ("overhead") to aggregate shop production and overhead cost (see Appendix O). The methods used to derive overhead costs and shop production costs in the calculation of the overhead application rate were in accordance with DCAA standards, which exclude certain overhead costs from consideration in the computation of the overhead rate.

**Reasonable Profit Margin**

Steward's normal business practices for submitting a formal bid on a government contract include its estimate of anticipated direct material and subcontract costs, production costs based on its estimate of the labor hours to be expended and its allowable per hour cost, and applied overhead (in accordance with DCAA standards) plus a reasonable profit margin of ten percent. A reasonable profit margin has, therefore, been added to each cost component in the calculation of economic costs incurred due to business interruption (see Appendices A, B, C, F, and G)

## MAINTENANCE COSTS

Direct maintenance costs incurred by Steward during the storage period consisted of direct material, subcontract, and labor costs and an allocation of variable production cost. Direct material, subcontract, and labor costs were derived from the detailed job cost report for the respective project. Variable production cost was derived from the application of Steward's actual Year 2000 variable production cost application rate to direct labor cost (see Appendix AB). The economic cost amount excludes fixed

4

production cost, overhead, and a reasonable profit margin because the nature of the White Oak Project maintenance, among other things, did not constitute a customized order.

## PREJUDGMENT INTEREST

Prejudgment interest (see Appendices D, E, and AA) was computed as of the date of this report (September 15, 2003) at the rate of 10% and, if necessary, will be updated prior to trial.

## CONCLUSION

I am of the opinion that White Oak caused Steward to incur economic cost of $2,915,493 plus prejudgment interest of $1,128,878, for total economic cost of $4,044,371, due to the business interruption resulting from the storage and maintenance of the White Oak Project. Furthermore, Steward management contends that other damages occurred that have not been considered in our findings or opinions as a result of the business interruption.

## OTHER CONSIDERATIONS

This report and appendices contain my opinions as of September 15, 2003. I reserve the right to consider new or additional information that is presented to me subsequently and to supplement my report and opinions as necessary.

My report is issued in accordance with the Management Consulting Standards of the American Institute of Certified Public Accountants. The information in this report is based on information learned through September 15, 2003. My firm is being compensated at hourly rates of $40.00 to $185.00 per hour in connection with this matter (see Appendix AC).

Very truly yours,

By: *[signature]*
J. Lester Alexander, III, CPA

5

## Supplement to the Expert Report of J Lester Alexander, III

**Steward Machine Co., Inc. ("Steward") v. White Oak Corporation ("White Oak") and National Union Fire Insurance Company of Pittsburgh, PA.**

As of September 2, 2004

This letter is a supplement to and should be read in conjunction with my report dated September 15, 2003.

My work has continued since issuing my prior report. In that regard, I have considered additional information and revised my opinions as appropriate. I considered information concerning 1) outside storage; 2) labor hours for job number G7938 (Gilbert Southern) and job number Z7161 (Zenith Tech); 3) production dates for certain jobs; and 4) other data utilized to increase the precision of my findings. I have revised my determinations of pre-judgment interest due to the passage of time. I have attached supporting details for these matters. My methodology and all other matters remain intact and unchanged.

My opinions, as amended, are as follows:

- Steward's storage of the White Oak Project led to decreased labor efficiency in the fabrication and machine shops and Steward incurred economic costs of $2,852,785, including pre-judgment interest (computed through the date of this report of September 2, 2004) during the storage period.

- Further, I am of the opinion that Steward incurred economic costs of $649,687, including prejudgment interest, related to the required maintenance of the White Oak Project during the storage period.

This supplement is based on work performed as of September 2, 2004. I reserve the right to consider new or additional information that is presented to me subsequently and to provide additional supplements to my report and opinions as necessary.

Very truly yours,

By: *[signature]*
J. Lester Alexander, III, CPA

Exhibit B

# ECONOMIC COSTS INCURRED BY THE FABRICATION AND MACHINE SHOPS PLUS PREJUDGMENT INTEREST FOR FABRICATION JOBS MANUFACTURED DURING THE STORAGE OF WHITE OAK

|  | Fabrication Shop | | | Machine Shop | | | Total Shop | | |
|---|---|---|---|---|---|---|---|---|---|
|  | Economic Costs Incurred | Pre-judgment Interest | Total | Economic Costs Incurred | Pre-judgment Interest | Total | Economic Costs Incurred | Pre-judgment Interest | Total |
| Variable shop costs - government contract rate: | | | | | | | | | |
| Productive labor (including overtime) | $ 403,289 | 203,657 | 606,946 | 69,446 | 35,070 | 104,516 | 472,735 | 238,726 | 711,461 |
| Other variable costs | 488,885 | 246,882 | 735,767 | 198,582 | 100,282 | 298,864 | 687,467 | 347,164 | 1,034,631 |
| Total variable shop costs | 892,174 | 450,539 | 1,342,713 | 268,028 | 135,351 | 403,379 | 1,160,202 | 585,890 | 1,746,092 |
| Fixed shop cost - governmental contract rate | 223,803 | 113,018 | 336,821 | 38,853 | 19,620 | 58,473 | 262,656 | 132,639 | 395,295 |
| Total shop costs | 1,115,977 | 563,557 | 1,679,534 | 306,881 | 154,972 | 461,853 | 1,422,858 | 718,529 | 2,141,387 |
| Overhead cost - government contract rate | 235,491 | 118,921 | 354,412 | 64,755 | 32,701 | 97,456 | 300,246 | 151,621 | 451,867 |
| Total economic costs | 1,351,468 | 682,478 | 2,033,946 | 371,636 | 187,672 | 559,308 | 1,723,104 | 870,150 | 2,593,254 |
| Reasonable profit margin - government contract rate | 135,289 | 68,320 | 203,609 | 37,158 | 18,764 | 55,922 | 172,447 | 87,084 | 259,531 |
| Total - fabrication jobs | $ 1,486,757 | 750,797 | 2,237,554 | 408,794 | 206,437 | 615,231 | 1,895,551 | 957,234 | 2,852,785 |

Appendix A



# ECONOMIC COST PLUS PREJUDGMENT INTEREST FOR MAINTENANCE OF THE WHITE OAK PROJECT

## September 2, 2004

| | Machine Shop Application Rates - Government Contract Method | | | | | |
|---|---|---|---|---|---|---|
| | Direct Material Cost | Direct Subcontract Cost | Total Materials/ Subcontract | Total Production Labor | Variable Production Cost | Total |
| Total economic costs incurred | $ 13,580 | 6,405 | 19,985 | 119,580 | 292,134 | 431,699 |
| **Calculation of prejudgment interest:** | | | | | | |
| Weighted average economic lost profits from 9/1/1996 [1] to 8/21/2000 [2] | $ 3,467 | 1,635 | 5,102 | 30,531 | 74,587 | 105,118 |
| Number of months in storage period | | | | | | 47 |
| **STORAGE PERIOD:** | | | | | | |
| Prejudgment interest at 10.0% from 9/1/1996 [1] to 8/21/2000 [2] | | | | | | |
| Weighted average daily interest (365-day year) | $ 0.95 | 0.45 | 1.40 | 8.36 | $ 20.43 | 30.19 |
| Number of days in storage period | 1,450 | 1,450 | 1,450 | 1,450 | 1,450 | 1,450 |
| Total prejudgment interest - storage period | $ 1,378 | 653 | 2,030 | 12,122 | 29,624 | 43,776 |
| **LOOKBACK PERIOD:** | | | | | | |
| Interest on economic lost profits from 8/21/2000 [2] to 9/2/2004 [3] | | | | | | |
| Daily interest | $ 3.72 | 1.75 | 5.47 | 32.76 | $ 80.04 | $ 118.27 |
| Number of days in period | 1,473 | 1,473 | 1,473 | 1,473 | 1,473 | 1,473 |
| Total prejudgment interest - lookback period | 5,480 | 2,578 | 8,057 | 48,255 | 117,899 | 174,212 |
| Total prejudgment interest | $ 6,858 | 3,231 | 10,087 | 60,377 | 147,523 | 217,988 |
| Total economic cost and prejudgment interest | $ 20,438 | 9,636 | 30,072 | 179,957 | 439,657 | 649,687 |

**Notes to Schedule:**

[1] The approximate beginning date of the storage period of the White Oak project based on review of the respective project manager's project correspondence file.

[2] Per agreement between Steward Machine Co., Inc., National Union Fire Insurance Company of Pittsburgh, PA, and White Oak Corporation dated August 21, 2000.

[3] Interest accrues through the current date.

Appendix AA

Exhibit D

## **CERTIFICATION**

This is to certify that on this 26th day of January 2005, a copy of the foregoing was mailed, postage prepaid, to:

Gary M. Case
Wolf, Horowitz, Etlinger, & Case, L.L.C.
99 Pratt Street
Hartford, CT 06103

Raymond Garcia
Jane Milas
Frederick Hedberg
Garcia & Milas
44 Trumbull Street
New Haven, CT 06510

_____
Barbara E. Crowley