THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEWARD MACHINE CO, INC. | : | CIVIL ACTION NO. |
| | : | |
| | : | 3:00CV00834(SRU) |
| V. | : | |
| | : | |
| WHITE OAK CORPORATION | : | |
| | : | |
| AND | : | |
| | : | |
| NATIONAL UNION FIRE INSURANCE | : | |
| COMPANY OF PITTSBURGH, PA. | : | JANUARY 24, 2005 |

**AFFIDAVIT OF
CHARLES DEBARDELEBEN IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

STATE OF ALABAMA    )
                                      )    ss.    BIRMINGHAM    JANUARY 24, 2005
COUNTY OF JEFFERSON  )

I, Charles DeBardeleben, being duly sworn, state as follows:

1. I am over the age of eighteen (18) years and believe in and understand the obligations of an oath.

2. At all times relevant, I have been, and still am, the Executive Vice-Presiden tand General Counsel of Steward Machine Co., Inc. ("Steward").

3. The facts recited herein are based on my personal knowledge of the events giving rise to this lawsuit.

4.  This case arises out of a public works project involving the replacement of the Tomlinson Bridge over the Quinnipiac River in New Haven, Connecticut (the "Project").

5.  On or about June 6, 1994, the State of Connecticut (the "State") entered into a contract (the "Contract") with White Oak Corporation ("White Oak") under the terms of which White Oak agreed to perform the replacement work described in the Contract for the contract price of $87,868,378.10.

6.  White Oak furnished to the State a payment bond in the amount of $87,868,378.10 with White Oak as principal and National Union as surety for the protection of persons supplying labor or materials in the prosecution of the work provided for in the Contract. A copy of the bond is attached to the Complaint as Exhibit A.

7.  The Contract work included the furnishing and erecting of certain specially designed machinery (the "Machinery") to raise and lower the bridge.

8.  On August 8, 1994, White Oak entered into a purchase order contract ("the Purchase Order") with Steward Machine Co., Inc. ("Steward") under the terms of which Steward agreed to specially manufacture the Machinery and to deliver it to White Oak in New Haven for the contract price of $7,553,000.

9.  The Purchase Order required White Oak to pay Steward's invoices within 10 days after the State paid White Oak for the Machinery or within 60 days of Steward's invoice, whichever was sooner.

10. The Purchase Order also provided for a service charge of 1% per month on all amounts not paid in accordance with the payment terms of the Purchase Order and further provided for attorneys' fees and costs if Steward was required to engage an attorney to enforce its rights under the Purchase Order.

11. Steward commenced manufacturing the machinery in accordance with shop drawings approved by the State.

12. In accordance with a schedule supplied by White Oak, Steward was planning to complete shipment of Machinery in September 1996.

13. However, in August 1996, White Oak advised Steward that the Project had been delayed and directed Steward not to ship the machinery until the delay issues had been resolved.

14. As September 1, 1996 the amount past due Steward from White Oak was in excess of $1,000,000.

15. White Oak further advised Steward that the delay issues would be resolved within three months, and requested Steward to store and maintain the Machinery until the delay issues were resolved.

16. Steward advised White Oak that it was not interested in storing and maintaining the Machinery because of the disruption it would cause to Steward's on-going manufacturing operations and because White Oak was delinquent in its payment obligations to Steward.

17. For these reasons Steward requested that White Oak arrange for the storage of the Machinery someplace other than Steward's manufacturing facilities.

18. The storage of the Machinery involved a great deal more than simply placing it in a warehouse or outside and protecting it from the weather.

19. Each piece of Machinery was manufactured to precise tolerances and was designed to function with other pieces of Machinery. In order to preserve the precise tolerances during storage it was necessary to periodically lubricate and rotate the moving parts of each piece of Machinery.

20. These maintenance activities involved large pieces of equipment, including a 250-ton overhead crane, and personnel with experience and expertise in the maintenance of precision equipment.

21. White Oak did not have the facilities, personnel, or equipment to store and maintain the machinery.

22. Since there was no practical alternative, Steward and White Oak agreed that Steward would store and maintain the Machinery at its plant at the rate of $8.00 per square foot per month for inside storage and the rate $5.00 per square foot per month for outside storage.

23. By letter dated November 15, 1996 to White Oak Steward confirmed that it would provide inside storage for the machinery at the rate of $8.00 per square foot per month and enclosed an invoice for the months of September and October. A copy of the letter is attached hereto as Exhibit A.

24. By letter dated December 12, 1996 to White Oak Steward confirmed that it would provide outside storage for the machinery at the rate of $5.00 per square foot per month. A copy of the letter is attached hereto as Exhibit B.

25.   DOT paid White Oak for the stored materials pursuant to 1.08.9.06 DOT's "Standard Specifications for Roads Bridges and Incidental Construction" ("DOT's Standard Specifications"). A copy of 1.08.06 is attached hereto as Exhibit C.

26.   Near the end of the original three months of storage White Oak advised Steward that the storage period had to be extended by an additional three months.

27.   Near the end of the second three month period White Oak advised Steward that the storage period would have to be extended by an additional six months; and White Oak advised Steward that machinery would have to be stored indefinitely.

28.   Throughout the continually expanding storage period, Steward advised White Oak that Steward did not want to store the machinery, and that the presence of the machinery was greatly interfering with operations of Steward's facilities, and causing Steward to incur economic costs significantly in excess of the amount of the storage fees White Oak had agreed to pay.

29.   The presence of the White Oak machinery interfered with Steward's operations in a number of ways, including but not limited to:

a)   It hampered the lay out of other jobs by taking up space needed for the layouts of the pieces for those jobs; thereby resulting in the jobs having to be done in a more piece meal fashion..

b)   At various times different pieces of the machinery would have to be moved around to different locations within Steward's facilities so that Steward's employees could access various machines, tools and work stations

necessary for other jobs; which required Steward's employees to spend time and utilize overhead cranes and other equipment to move the machinery.

        d)    It reduced the assembly work areas requiring assembling on other jobs to be done in a piece meal fashion.

        c)    The machinery required regular maintenance by Steward's employees

30.    Steward sent White Oak an invoice for the storage charges for each of the 47 months from September 1996 to August 2000.

331.    At no time prior to the commencement of this lawsuit did White Oak dispute even one of the invoices for storage.

32.    White Oak has yet to pay a single invoice for storage.

33.    Steward keeps track of its labor hours on a given project by assigning a job record number to each job. Steward's workers then, in addition to punching in a regular time clock for their daily hours, punch in on a job ticket for the particular project they are working on.

34.    In or about April of 1998, Steward instructed its employees that when ever they had to perform any work directly related to the stored White Oak machinery, such as moving a piece of equipment, they were to: punch out on the job ticket of the project they had been working on; punch in on the job ticket for White Oak storage, perform the work related to the stored White Oak equipment; punch out on the White Oak storage job ticket; and punch back in on the job ticket for the project they had been working on.

34. In or about April of 1998, Steward instructed its employees that when ever they had to perform any work directly related to the stored White Oak machinery, such as moving a piece of equipment, they were to: punch out on the job ticket of the project they had been working on; punch in on the job ticket for White Oak storage, perform the work related to the stored White Oak equipment; punch out on the White Oak storage job ticket; and punch back in on the job ticket for the project they had been working on.

35. Despite these instructions, many times Steward's employees would not go through the punch out, punch procedure just described.

36. Steward realized that although it knew it had incurred substantial economic costs because of the storage of the White Oak material, it did not know how to quantify these losses; and accordingly retained the services of J. Lester Alexander, CPA, to quantify those economic costs.

Dated at Birmingham, Alabama, this 2 4 day of January, 2003.

_____
Charles DeBardeleben

Subscribed and sworn to before
me this 2' day of January, 2005.

_____
Notary Public  Com Expires 3-23-07

7

# STEWARD MACHINE CO., INC.
### *Machinists and Engineers*
P. O. BOX 11008
BIRMINGHAM, ALABAMA 35202

PHONE
205 - 841-6461

FAX
205 - 849-8029

November 15, 1996

White Oak Corporation
7 West Main Street
Plainville, CT 06062

Attn: Mr. George Hird

RE: TOMLINSON BRIDGE MATERIALS STORED ON-SITE
    STATE OF CONNECTICUT LETTER DATED AUGUST 26, 1996

Dear George:

With reference to the above and to your letter dated October 1, 1996, below is a tabulation indicating the amount of area necessary for storage of Steward Machine Co., Inc.'s job number 5345W, Bid Item #601015A, Counterweight Sheaves, Shafts and Bearings. This item is complete and has been stored indoors to-date. Very soon we will be moving the Main Sheaves outdoors, and at that time, the costs per square foot will be decreased; however, we will be including the costs for handling such as crane rental as well as any necessary costs involved with this outdoor storage.

| Description | Sq. Footage Required |
|---|---|
| 8 Main Sheaves | 5,000 |
| Main Counterweight Sheave Shafts | 288 |
| Main Sheave Bearings & Housings | 848 |
| Auxiliary Counterweight Sheaves, Shafts, Bearings, & Auxiliary Hitch With Bearings, Shims, Mounting Plates, Etc. | 441 |
| Total Sq. Footage Required: | 6,577 |
| @ $8.00/Per Sq. Ft. = | $52,616.00 Per Month |

Attached please find our invoice for the months of September and October, 1996, for this storage.

Please advise if you need any further information. Prompt payment will be appreciated.

Yours very truly,

Jerry Shivers
Project Manager

Exhibit A

# STEWARD MACHINE CO., INC.

*Machinists and Engineers*

P. O. BOX 11008
BIRMINGHAM, ALABAMA 35202

PHONE
205 - 841-6461

FAX
205 - 849-8029

December 12, 1996

White Oak Corporation
7 West Main Street
Plainville, CT 06062

Attn:  Mr. George Hird

RE: TOMLINSON BRIDGE MATERIALS STORED ON-SITE
    STATE OF CONNECTICUT LETTER DATED AUGUST 26, 1996

Dear George:

With reference to the above and to your letter dated October 1, 1996, below is a tabulation indicating the amount of area necessary for storage of Steward Machine Co., Inc.'s job number 5344W, Bid Item #601016A, Main and Auxiliary Counterweight Ropes and Accessories. This item is complete and has been stored both indoors and outdoors to-date.

**INDOOR STORAGE**

| Description | Sq. Footage Required |
|---|---|
| 8 Rope Billets | 77-1/2 |
| 8 Auxiliary Counterweight Rope Takeups | 6-1/2 |
| Total Sq. Ft. Required: | 84 |
| @ $8.00/Per Sq. Ft. = | $672.00/Month |

*************************************************************

**OUTDOOR STORAGE**

| Description | Sq. Footage Required |
|---|---|
| Main Counterweight Rope Takeups (Long) | 84 |
| Main Counterweight Rope Takeups (Short) | 70 |
| Cap Nuts For The Above | 64 |
| Total Sq. Ft. Required: | 218 |
| @ $5.00/Per Sq. Ft. = | $1,090/Month |

Exhibit 6

Tomlinson Bridge Storage Charges Recap

SMC Job 5346-W
Bid Item #100250A
Lock Machinery

| Indoor Storage | Sq. Ft. | $ |
|---|---|---|
| Lock Bars 479-2-1 | 34 | |
| Forward Guide & Bushings 479-3-1 and 4-4 | 52 | |
| Rear Guide & Bushing 479-4-1 and 4-4 | 12 | |
| Connecting Rods 479-1-2 | 16 | |
| Crank Arms 479-1-1 | 18 | |
| Crank Bearings 479-E2-1, -2 | 8 | |
| Reducers 479-E2-19 R/L | 40 | |
| Receiving Sockets 479-4-1 | 12 | |
| Couplings 479-E2-3 | NC | |
| Couplings 479-E2-4 | NC | |
| Couplings 479-E2-5 | NC | |
| Total Square Ft. Required | 192 | |
| @ $8.00/Sq. Ft. | | $1,536.00 |

## CERTIFICATION

This is to certify that on this 26th day of January 2005, a copy of the foregoing was mailed, postage prepaid, to:

Gary M. Case
Wolf, Horowitz, Etlinger, & Case, L.L.C.
99 Pratt Street
Hartford, CT 06103

Raymond Garcia
Jane Milas
Frederick Hedberg
Garcia & Milas
44 Trumbull Street
New Haven, CT 06510

Barbara E. Crowley

## CERTIFICATION

This is to certify that on this 26th day of January 2005, a copy of the foregoing was mailed, postage prepaid, to:

Gary M. Case
Wolf, Horowitz, Etlinger, & Case, L.L.C.
99 Pratt Street
Hartford, CT 06103

Raymond Garcia
Jane Milas
Frederick Hedberg
Garcia & Milas
44 Trumbull Street
New Haven, CT 06510

Barbara E. Crowley