# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEWARD MACHINE COMPANY | : | 3:00 CV 00834 (SRU) |
| PLAINTIFF | : | |
| | : | |
| VS. | : | |
| | : | |
| WHITE OAK CORPORATION et al | : | |
| DEFENDANT | : | February 14, 2005 |

## THE DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA's BRIEF IN REPLY TO STEWARD MACHINE COMPANY'S OBJECTION TO MOTION IN LIMINE AND MOTION FOR SUMMARY JUDGMENT

The Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") hereby replies to the Steward Machine Company's ("Steward") January 25, 2005 Response to National Union's Motion For Summary Judgment and Motion in Limine regarding certain of the claims asserted by Steward in this case.

Steward's arguments can be summarized as follows:

1. **Collateral Contract Claim** – Steward claims for the first time in this case that it should be allowed to proceed on its "Storage Fee" claim of $2,095,476, because it claims that it and White Oak Corporation ("White Oak") entered into a "collateral" or separate contract, pursuant to which White Oak agreed to pay $8 and $5 per square foot per month for storage of the machinery. Steward further claims that National Union's liability as payment bond surety extends to damages flowing from the alleged breach of this "collateral contract" by White Oak.

2. **Business Disruption Damages** – Steward claims that National Union is liable as payment bond surety for Steward's business disruption damages because these damages reflect the "extra labor and plant facilities that were consumed by the

1

storage of" the machinery, and because the bond expanded National Union's

liability by incorporating ConnDOT's Standard Specification § 1.08.9.06;

3. **<u>Damages Accruing After August 24, 2000</u>** – Steward claims that the August 24,

2000 Agreement does not preclude Steward from seeking interest and service

charges after August 24, 2000 because the term "damages accruing" as used in the

Agreement does not extend to statutory interest and service charges accruing after

August 24, 2000.

Steward's arguments are erroneous and must be rejected for the following reasons:

## I.    Steward cannot recover on its "Collateral Contract" Claim for Storage Fees

### 1.    Steward Cannot Rely on Any Separate or Collateral Contract Because it Was Not Alleged in its Complaint

Steward cannot recover under any supposed collateral or separate contract to the original

Purchase Order with White Oak because the only contract alleged in its complaint was the

original Purchase Order.  The only Paragraphs in Steward's complaint that can reasonably be

interpreted to encompass storage are Paragraphs 9-12.  These state as follows:

9.    Prior to December 1995 White Oak directed Steward not to deliver the Machinery to the Project and to store the completed Machinery at it [sic] facilities in Birmingham, Alabama.

10.    Subsequent to January 1996 White Oak directed Steward to suspend manufacturing the Machinery because the delays at the Project were of an uncertain duration and White Oak was unable to ascertain when it would be in a position to receive the Machinery.

11.    Steward continues to store the Machinery as directed by White Oak.

12.    Steward has fully performed all its obligations **under the Purchase Order**, except those obligations White Oak directed Steward not to perform.

(<u>See</u> the Plaintiff's Complaint dated May 5, 2000, ¶¶ 9-12) (emphasis added).

Clearly Steward did not allege any other contract to which it and White Oak were parties,

relating to storage or any other topic.  Even when claiming that it had fully performed its

2

obligations, it specifically stated that those obligations were pursuant to the Purchase Order, and not any separate or collateral agreement between White Oak and Steward.

Steward now alleges a separate collateral agreement pertaining to storage for the first time in its January 25, 2005 Response to National Union's Motion for Summary Judgment, more than four and a half years after its Complaint. The rules of civil procedure require a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At a minimum this requires the plaintiff to clearly identify in its complaint the specific contract from which it claims damages. See Lee v. City of Hartford/Hartford Public Schools, 289 F.Supp.2d 25 (D. Conn. 2003) (Dorsey, J.) (dismissing complaint which failed to allege factual basis for existence of contract).

Furthermore, any claim that the purchase order was modified must also be specifically pled. In Travel Center of Fairfield County, Inc. v. Royal Cruise Line Ltd., 154 F.Supp.2d 281, 287-88 (D.Conn. 2001) (Arterton, J.), the Court held that under Connecticut law a claim of modification of a contract must be pleaded. Id. Citing Rosick v. Equipment Maintenance & Service, Inc., 33 Conn. App. 25, 32, 632 a.2D 1134 (1993) (the Royal Cruise Line Court interpreted Rosick as follows: "plaintiff offered evidence of oral modification of contract, but evidence excluded by trial court as irrelevant; Appellate Court affirmed, because 'the complaint does not claim an oral modification or waiver of the contract. Since oral modification or waiver is not alleged in the complaint, the issue cannot be tried during trial.'"). The facts of Travel Center are analogous to the instant situation. Plaintiff travel agency brought suit against a cruise line to recover damages under breach of contract. In August of 1995 the parties entered into an agreement for three cruises. Due to several natural disasters, the plaintiff had difficulty booking

3

WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. Counselors At Law
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

the cruises.  Recognizing these difficulties, in November a representative of the defendant agreed to abandon the August agreement and enter into a new venture whereby the defendant would agree to help the plaintiff by using its "best efforts" to fill the cruises.

An issue in the case was which agreement constituted the binding contract between the parties.  The jury found that the August agreement was the operative contract, and the plaintiff filed motions for a new trial and for a judgment as a matter of law.  There, the plaintiff argued for the first time that the jury instructions should have included language that would have allowed the jury to find that the November agreement modified the August agreement.  The Court held, *inter alia*, that despite four different opportunities to amend the complaint, the plaintiff never alleged that the November agreement was a modification to the August agreement.  The Court also noted that the plaintiff made its position clear in the time leading up to trial, including at the pre-trial conference, and its position never included modification. Therefore, the Court denied its motions.

Because Steward did not allege any modification of the Purchase Order or separate or collateral contract in its Complaint, making the argument for the first time nearly four and a half years after its Complaint, it may not rely on evidence of such a modification or collateral agreement in support of opposition to National Union's Motion for Summary Judgment.  Nor can it rely on evidence of such a modification or collateral contract to recover under such alleged contract.  See also, Defendants' Motion to Exclude Evidence and/or Motion in Limine, filed on February 9, 2005.

    **2.**       **Assuming That Steward Is Entitled to Assert the Existence of a Separate Agreement, Steward Has Failed to Demonstrate the Existence of a Genuine Issue of Material Fact That Such an Agreement Was Reached**

4

Assuming that Steward is allowed to produce evidence of a separate contract or modification that was not pleaded in its Complaint, it cannot show that the requirements for contract formation were met.  Under Connecticut law, "to form a valid and binding contract…, there must be a mutual understanding of the terms that are definite and certain between the parties….  If the minds of the parties have not truly met, no enforceable contract exists."  L&R Realty v. Connecticut National Bank, 53 Conn. App. 524, 534, 732 A.2d 181 (1999), cited in Reilly v. Benoit, No. CV 551426, 2000 Conn. Super LEXIS 2730 (J.D. New London, Oct. 12, 2000) (attached hereto as Exhibit A).  "To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties."  Reilly, citing Bridgeport Pipe Engineering Co. v. DeMatteo Constr. Co., 159 Conn. 242, 249, 268 A.2d 391 (1970).  Implied contracts also require proof of mutual assent between the parties: "[An implied] contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties….  In order to support contractual liability, the [defendant's] representations must be sufficiently definite to manifest a present intention of the part of the [defendant] to undertake immediate contractual obligations to the [plaintiff]."  Burnham v. Karl & Gelb, P.C., 50 Conn. App. 385, 389, 717 A.2d 811 (1998) cited in O'Leary v. Stamford Board of Educ., No. CV 020188358, 2004 Conn. Super. LEXIS 1938 (J.D. Stamford, July 13, 2004) (attached hereto as Exhibit B).

Steward cannot show the existence of a genuine material issue of fact that a written contract was formed between White Oak and Steward pertaining to the payment of $8.00 and $5.00 per month for storage of the machinery.  Steward's Brief states that "1) by virtue of the correspondence, there was a writing signed by White Oak agreeing to payment of the storage

WOLF, HOROWITZ, ETLINGER, & CASE  L. L. C. Counselors At Law
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

fees; or 2) by virtue of the discussions between the parties there was a parol agreement for the

storage fees; or 3) by virtue of White Oak receiving invoices to which it never objected, the

storage agreement should be implied in fact from the parties conduct." See Plaintiff's January

25, 2005 Response to National Union's Motion for Summary Judgment, pg. 12.  These

conclusory allegations rely solely on the affidavit of Charles Debardeleben, who states:

> 22.    Since there was no practical alternative, Steward and White Oak agreed that
> Steward would store and maintain the Machinery at its plant at the rate of $8.00
> per square foot per month for inside storage and the rate $5.00 per square foot per
> month for outside storage.
>
> 23.    By letter dated November 15, 1996 to White Oak Steward confirmed that it would
> provide inside storage for the machinery at the rate of $8.00 per square foot per
> month and enclosed an invoice for the months of September and October.  A copy
> of the letter is attached hereto as Exhibit A.
>
> 24.    By letter dated December 12, 1996 to White Oak Steward confirmed that it would
> provide outside storage for the machinery at the rate of $5.00 per square foot per
> month.  A copy of the letter is attached hereto as Exhibit B.

Affidavit of Charles Debardeleben dated January 24, 2005, pg. 4.

These are nothing more than conclusory statements.  The letters referred to do not

provide any reference to a previous agreement, do not purport to memorialize any previous

agreement and are not acknowledged by White Oak as any sort of agreement between the parties.

This is clearly not enough to evidence an express, written contract, as there is no "meeting of the

minds" or an "identical understanding".  And since the Affidavit does not identify any oral

discussions or agreements between White Oak and Steward, the evidence provided by the

Plaintiff is wholly insufficient to show a material issue of fact as to the existence of an express,

either written or oral, contract.  "To survive summary judgment the nonmoving party must come

forward with 'specific facts showing that there is a genuine issue for trial." Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

WOLF, HOROWITZ, ETLINGER, & CASE  L. L. C. Counselors At Law
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

"Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." <u>Niagara Mohawk Power Corp. v. Jones Chem.</u>, 315 F.3d 171, 176 (2d Cir. 2003). "A non-movant's reliance upon conclusory statements or mere allegations ... is insufficient to defeat a summary judgment motion. <u>See</u> <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532-33 (2d Cir. 1993); Fed. R. Civ. P. 56(e).

     In addition, the evidence provided by the Plaintiff also does not establish any genuine issue of material fact as to the existence of an implied contract. To form an implied contract, there still must be a manifestation of assent to the contract implicit in the failure to act. That is not shown by Debardeleben's Affidavit, because an allegation that White Oak did not dispute or pay any of the invoices sent is clearly not sufficient to manifest consent to be bound by the invoices. Simply because a party does not respond to inflated invoices being sent to it does not provide the basis for concluding that the party consents to be bound by those invoices – to the contrary, it evidences the lack of any agreement to pay such invoices.

    **3.**    **Assuming Steward Can Show a Genuine Issue of Material Fact Pertaining to an Oral Contract, Any Oral Contract Claim is Barred by the Statute of Limitations**

     Any attempt by Steward to enforce an oral contract is barred by the three-year statute of limitations for oral contracts, Connecticut General Statutes § 52-581. Even if Steward could show an oral contract was created via conversations between the parties in 1996, and that it was separate from the underlying Purchase Order, it was breached in early 1997 at the latest and the action for breach of contract accrued at that time. The statute of limitations states for oral executory contracts:

7

> (a) No action founded upon any express contract or agreement which is not reduced to writing, or of which some note or memorandum is not made in writing and signed by the party to be charged therewith or his agent, shall be brought but within three years after the right of action accrues.

See Conn. Gen. Stat. § 52-581

Since Steward alleges that it continued to store the machinery well after the alleged agreement was made, this was an executory oral contract that Steward did not fully perform at the time of breach. Here, the Debardeleben Affidavit confirms that White Oak did not dispute a single one or pay any of the invoices (See Debardeleben Affidavit ¶¶ 31-32). Any cause of action here would have accrued no later than early 1997, when White Oak failed to make payment on the first of Steward's invoices under the alleged "collateral agreement". Steward did not file suit until May 5, 2000, more than three years later. Therefore, any action based on an alleged oral contract is barred by the statute of limitations.

In summary, Steward's claim that a contract exists is a mere conclusory allegation, without any supporting evidence or documents to substantiate the allegation. Steward fails to produce any documents that could be deemed an enforceable written contract. Steward fails to identify any oral conversations or discussions that would constitute an oral contract. Steward fails to allege any facts that would establish the existence of an implied contract. Therefore, there is no issue of material fact that there was no contract, express or implied, created between White Oak and Steward regarding the storage of machinery.

4.     **Assuming the Existence of a Separate Contract, Steward Cannot Recover Because Any Such Contract was not "Collateral" to the Purchase Order and is Therefore Precluded by the Purchase Order and § 42a-2-209**

Any verbal understanding regarding payment of the storage fees constituted an oral modification of the Purchase Order, which is barred by the terms of the Purchase Order and by

8

WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. *Counselors At Law*
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

Conn. Gen. Stat. § 42a-2-209.  The Purchase Order required that any subsequent modification be in writing and signed by both parties.  The Purchase Order states:

> No terms and conditions in anyway altering or modifying the provisions hereof shall be binding upon Buyer or seller unless in writing and signed by an authorized representative of Buyer and Seller.

The Plaintiff cites <u>Blakeslee v. Board of Water Commissioners</u>, 121 Conn. 163, 183 A.2d 887 (1936) for the proposition that under the common law an agreement may be modified by a subsequent parol agreement even if the underlying contract has a provision barring modifications except in writing.  <u>Blakeslee v. Board of Water Commissioners</u> is inapplicable because it was decided under the common law.  The Purchase Order between White Oak and Steward is governed by the Uniform Commercial Code, as it is a contract for the sale of goods.  The Code recognizes that the "no modification" provision in the Purchase Order under Conn. Gen. Stat. § 42a-2-209 must be enforced.  This provision states, in pertinent part:

> (2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.
> Conn. Gen. Stat. § 42a-2-209.

In its brief, Steward claimed that the "no modification" provision in the Purchase Order applied only to any <u>prior</u> discussions or agreements leading up to the execution of the purchase order, but would not apply to any "subsequent" modifications of an agreement.  This is a misstatement of the law.  The Official Commentary to § 42a-2-209 makes clear that the "no modification" clauses in agreements covered by the Code will be enforced with respect to alleged <u>subsequent</u> modifications between the parties:

> Uniform Commercial Code Comment: Subsection (2) permits the parties in effect to make their own Statute of Frauds as regards any <u>future modification of the contract</u> by

WOLF, HOROWITZ, ETLINGER, & CASE  L. L. C. *Counselors At Law*
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

giving effect to a clause in a signed agreement which expressly requires any modification to be by signed writing.

Conn. Gen. Stat. § 42a-2-209 Official Commentary (emphasis added).

In addition, the Code's Statute of Frauds precludes enforcement of a modification of certain contracts where there is not writing:

§ 42a-2-201. Formal requirements; statute of frauds

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Conn. Gen. Stat. § 42a-2-201.

These Code sections demonstrate that the Purchase Order could not be modified except by a writing signed by both parties. The Plaintiff points to no law under the Code that allows for contract modification by parol agreement in the face of a clause in the contract preventing the same.

Steward attempts to avoid the effect of the "no modification" clause in the purchase order by claiming that the alleged storage agreement was a "collateral" agreement and was not governed by the provisions of the Code. See Conn. Gen. Stat. § 42a-2-701 ("remedies for breach of any obligation or promise collateral or ancillary to a contract for sale are not impaired by the provisions of this article.") This provision is inapplicable because any alleged agreement was so closely linked to the subject of the Purchase Order that it cannot be considered "collateral." The cases cited by the Plaintiff purporting to define "collateral agreements" do not arise under the

10

WOLF, HOROWITZ, ETLINGER, & CASE  L. L. C  *Counselors At Law*
99 Pratt Street, Hartford, CT 06103  *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488