# EXHIBIT B

LEXSEE 2004 CONN. SUPER. LEXIS 1938

Jane O'Leary v. Stamford Board of Education

CV020188358

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF STAMFORD

2004 Conn. Super. LEXIS 1938

July 13, 2004, Decided
July 13, 2004, Filed

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In a breach of contract action by plaintiff applicant for a teaching position, defendant school board moved for summary judgment, arguing that the applicant never received a written employment contract, signed by the superintendent, as required by *Conn. Gen. Stat. § 10-151(b)*.

**OVERVIEW:** The applicant for a teaching position at a new charter school received an enthusiastic letter of welcome from the administrator responsible for curriculum and instruction inviting her to planning meetings before school opened. Soon after she attended the meetings, for which participation she was paid, a personnel administrator advised her that she had not been hired, and she soon obtained a position with another district. Nonetheless, she sued, arguing that a teaching contract should be implied from the facts. The court held that the evidence showing a meeting of the minds between the parties was simply insufficient. The curriculum administrator's mistaken belief that she had been hired was not enough to show that there had been an offer and acceptance, particularly because the statutory formalities required for such a contract had not been observed.

**OUTCOME:** The court granted the board's motion.

**CORE TERMS:** teacher, implied contract, summary judgment, quotation, superintendent, municipal, temporary, express contract, hired, issues of material fact, matter of law, genuine, hiring, curriculum, genuine issue of material fact, contract of employment, entitled to judgment, party opposing, trier of fact, genuine issue, written offer, moving party, manifestation, constituting, contractual, evidentiary, undertake, hire, wrongfully discharged, quantum meruit

**LexisNexis(R) Headnotes**

*Contracts Law > Statutes of Frauds*
*Education Law > Faculty & Staff > Employment Contracts*
[HN1] *Conn. Gen. Stat. § 10-151(b)* authorizes a superintendent to either employ teachers directly or submit nominations to the local board of education for a particular position. In either event, the contract of employment of a teacher shall be in writing.

*Civil Procedure > Trials > Judgment as Matter of Law*
*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN2] Pursuant to Conn. Gen. Prac. Book, R. Super. Ct. § 17-49, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is

whether a party would be entitled to a directed verdict on the same facts.

**Civil Procedure > Summary Judgment > Burdens of Production & Proof**
[HN3] The party seeking summary judgment has the burden of showing the absence of any genuine issue of material facts that, under applicable principles of substantive law, entitles him to a judgment as a matter of law and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. A fact is material if its existence would make a difference in the result of a case.

**Civil Procedure > Summary Judgment > Summary Judgment Standard**
[HN4] A trial court, in the context of a summary judgment motion, may not decide issues of material fact but only determine whether such genuine issues exist.

**Contracts Law > Breach > Causes of Action**
[HN5] In terms of a breach of contract action, it is well established that the elements are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages.

**Contracts Law > Types of Contracts > Implied-in-Fact Contracts**
[HN6] To prevail on a claim alleging the existence of an implied contract, a plaintiff has the burden of proving by a fair preponderance of the evidence that the defendant agreed, either by words or action or conduct, to undertake some form of actual contraction commitment. Although both express contracts and contracts implied in fact depend on actual agreement, it is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations.

**Contracts Law > Types of Contracts > Implied-in-Fact Contracts**
[HN7] An implied contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties. In order to support contractual liability, the defendant's representations must be sufficiently definite to manifest a present intention on the part of the defendant to undertake immediate contractual obligations to the plaintiff. The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act. The existence of an implied contract, and the terms of that contract, are generally questions of fact to be determined by the trier of fact on the basis of all the evidence.

**Contracts Law > Types of Contracts > Implied-in-Fact Contracts**
[HN8] A key component of an implied contract is the meeting of the minds between the parties.

**Governments > Local Governments > Duties & Powers**
**Contracts Law > Types of Contracts > Implied-in-Fact Contracts**
**Governments > Local Governments > Claims By & Against**
[HN9] A municipal corporation in a proper case may be liable upon an implied contract as distinguished from an express contract. Implied contracts arise where there is a bargained-for exchange intended by the parties, but no overt expression of agreement. If the municipality has power to contract by express contract and the contract is not against public policy, and there are no statutory or charter provisions limiting the mode of execution of a similar express contract, it will be liable on an implied contract where it has received benefits. Under such circumstances, by reason of benefits received, the liability of the municipal corporation may be based upon quantum meruit. The fiction of an implied promise or agreement, or the theory of a liability based on quantum meruit, cannot be substituted for an express contract which is void for noncompliance with mandatory terms of the statutes or charter; in some cases where there is a charter provision or statute or ordinance prescribing the method by which an officer or agent of a municipal corporation may bind the municipality by contract, that method must be followed, and there can be no implied contract or implied liability of the municipal corporation under such circumstances.

**JUDGES:** William B. Lewis, Judge Trial Referee.

**OPINIONBY:** William B. Lewis

**OPINION:** MEMORANDUM OF DECISION

The plaintiff, Jane O'Leary, commenced a suit against the Stamford Board of Education (board), the defendant. n1 The plaintiff claims that she was wrongfully discharged from her employment as a teacher. The defendant board contends that the plaintiff was never hired as a teacher and hence could not be wrongfully discharged.

n1 The plaintiff also sued Edward Matthews, a member of the defendant board, but subsequently withdrew her action as to this

individual and hence the board is now the only defendant.

The operative complaint is dated May 31, 2002, and contains two counts against the defendant. In the first count, the plaintiff alleged that she was offered a teaching position at a new magnet school, the Academy of Information Technology (AIT). She further alleged [*2] that the head of the English Department, Margaret Queenan, interviewed the plaintiff and later told her that she had been recommended for the position as an English teacher at the AIT, and that she should submit a formal application to the defendant board. It is also alleged in the complaint that the plaintiff filed an application for employment; that she was thereafter offered a position at the AIT for one year; that she accepted the offer of employment and started work on or about August 15, 2000, on a temporary basis as a per diem employee before school formally opened; and that her employment was terminated by the defendant board without reason or cause on August 22, 2000. In the second count of the complaint, the plaintiff alleged that her discharge from employment violated various provisions of the United States and Connecticut constitutions and certain federal civil rights statutes.

The defendant filed an answer in which it denied the material allegations of the complaint. The defendant did agree that the plaintiff had been invited to file a formal application for employment and did so. The defendant also agrees that the plaintiff worked for the board for a short period of [*3] time in August 2000, but not in the position of an English teacher at AIT, rather on a temporary per diem basis.

The defendant has now filed motion # 118 for summary judgment in which it claims that the plaintiff never received a written contract of employment, signed by the Superintendent of Schools, as required by *General Statutes § 10-151(b)*. [HN1] This statute authorizes a superintendent to either employ teachers directly or submit nominations to the local board of education for a particular position. In either event, "the contract of employment of a teacher shall be in writing."

Attached to the motion for summary judgment is an affidavit by Peter Dibble, the personnel administrator of the defendant board, that the plaintiff had been paid approximately $ 580 for temporary work involving curriculum preparation, amounting to about twenty-one hours, in August of 2000; that on August 23, 2000, he had advised the plaintiff that she had not been hired as a teacher for the coming academic year; that the plaintiff took no further steps to pursue her application for employment with the defendant; and that, within several days thereafter, the plaintiff obtained a comparable [*4] position at a slightly higher salary with the Bridgeport Board of Education.

In opposition to the defendant's motion for summary judgment, the plaintiff submitted her own affidavit, which included a letter to her dated August 7, 2000, from Christine M. Casey, Assistant Superintendent for Curriculum and Instruction. In pertinent part, this letter stated: "Welcome to the Academy of Information Technology . . . You will be at the 'cutting edge' in our district and I believe the state and nation . . . I am attaching a list of meetings and events to which you are invited . . . The day that is really important to me is the retreat scheduled for August 25. This is where we'll get to know each other and share our dreams and expectations . . . I hope to see you at the attached events and look forward to getting to know you. You will have tremendous input into the way things work at AIT. Get your ideas ready-we're in this together! . . . We're almost ready for lift off-see you at the launch pad."

[HN2] "Pursuant to Practice Book § 17-49, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material [*5] fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) *Neuhaus v. DeCholnoky, 83 Conn.App. 576, 581, 850 A.2d 1106 (2004)*. [HN3] "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact . . ." (Citations omitted; internal quotation marks omitted.) *Witt v. St. Vincent's Medical Center, 252 Conn. 363, 368, 746 A.2d 753 (2000)*.

"The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." *Appleton v. Board of Education, 254 Conn. 205, 209, 757 A.2d 1059 (2000)*. A fact is [*6] material if its existence would make a difference in the result of a case. *United Oil Co. v. Urban Development Commission, 158 Conn. 364, 379, 260 A.2d 596 (1969)*. Finally, [HN4] the trial court, in the context of a summary judgment motion, may not decide issues of material fact but only determine whether such genuine issues exist. *Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988)*.

Thus, in addressing this motion for summary judgment, the issue is whether the defendant, as the moving party, has demonstrated that there are no genuine issues of material fact whether the plaintiff was hired as a teacher by the defendant board. It is clear that the plaintiff does not have a written offer of employment signed by the superintendent of schools as required by *General Statutes § 10-51(b)*. The plaintiff, however, relies on the letter from Dr. Casey as constituting an implied contract.

[HN5] In terms of a breach of contract action, it is well established that the elements are "the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Citations omitted; internal quotation marks omitted. [*7] ) *Rosato v. Mascardo, 82 Conn.App. 396, 411, 844 A.2d 893 (2004)*. [HN6] To prevail on a claim alleging the existence of an implied contract "the plaintiff had the burden of proving by a fair preponderance of the evidence that [the defendant] had agreed, either by words or action or conduct, to undertake [some] form of actual contraction commitment." (Citations omitted; internal quotation marks omitted.) *Coelho v. Posi-Seal International, Inc., 208 Conn. 106, 112, 544 A.2d 170 (1988)*. Although both express contracts and contracts implied in fact depend on actual agreement; *Coelho v. Posi-Seal International, Inc., Id., 111*; "it is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations." *Rahmati v. Mehri, 188 Conn. 583, 587, 452 A.2d 638 (1982)*.

[HN7] "[An implied] contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties . . . In order to support contractual liability, the [defendant's] representations must be sufficiently definite [*8] to manifest a present intention on the part of the [defendant] to undertake immediate contractual obligations to the [plaintiff]." (Citations omitted; internal quotation marks omitted.) *Burnham v. Karl & Gelb, P.C., 50 Conn.App. 385, 389, 717 A.2d 811 (1998)*, aff'd, *252 Conn. 153, 745 A.2d 178 (2000)*. "The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act." (Internal quotation marks omitted.) *Thames River Recycling, Inc. v. Gallo, 50 Conn.App. 767, 798, 720 A.2d 242 (1998)*.

The existence of an implied contract, and the terms of that contract, are generally questions of fact to be determined by the trier of fact on the basis of all the evidence. See *Christensen v. Bic Corp., 18 Conn.App. 451, 454, 558 A.2d 273 (1989)*. In the present case, however, the plaintiff has provided no evidence that would permit a trier of fact to draw a reasonable inference that an implied contract existed between the parties. [HN8] A key component of an implied contract is the "meeting of the minds" between the parties. *Burnham v. Karl & Gelb, P.C., supra, 50 Conn.App. 389.* [*9] In this present case, this component is missing. There is insufficient evidence from which the court could conclude that there was "a meeting of the minds" between the plaintiff and the defendant.

[HN9] "A municipal corporation in a proper case may be liable . . . upon an implied contract as distinguished from an express contract. Implied contracts arise where there is a bargained-for exchange intended by the parties, but no overt expression of agreement." 10 McQuillen Municipal Corporations, § 29.110 p. 96-97 (3d Ed. Rev. 1999). "If the municipality has power to contract by express contract and the contract is not against public policy, and there are no statutory or charter provisions limiting the mode of execution of a similar express contract, it will be liable on an implied contract where it has received benefits . . . Under such circumstances, by reason of benefits received, the liability of the municipal corporation may be based upon quantum meruit . . ." *Id.*, § 29.111, p. 101. "The fiction of an implied promise or agreement, or the theory of a liability based on quantum meruit, cannot be substituted for an express contract which is void for noncompliance with mandatory terms of [*10] the statutes or charter . . . in some cases where there is a charter provision or statute or ordinance prescribing the method by which an officer or agent of a municipal corporation may bind the municipality by contract, that method must be followed, and there can be no implied contract or implied liability of the municipal corporation under such circumstances." *Id.*

In this case, *General Statutes § 10-151(b)* prescribes a method for hiring teachers. Dr. Casey did not have the authority to hire the plaintiff because only the superintendent may perform that function, and the contract of employment must be in writing. In any event, Dr. Casey's letter is not an offer of employment. It merely is an enthusiastic welcome to a new hire for the AIT job, and assumes, albeit erroneously, that the recipient, the plaintiff, was formally and legally hired by the superintendent.

The plaintiff also claims that her temporary employment before school started in September 2000 is another indication of an implied contract between herself and the defendant board. The job did not involve teaching English at the AIT. Rather, the plaintiff worked on curriculum development in response [*11] to the Casey letter of August 7, 2000, which stated, among other things, that: "If you are available to work any days in August, we can use your help. We especially need to develop our electives and meet with upper classmen to

individualize their programs. Call Carol at 977-4567 if you are available." This offer of temporary summer employment can hardly be classified as a formal offer of one-year employment as an English teacher at the AIT, nor can the fact that the plaintiff worked about twenty-one hours in August 2000, be construed as offering full-time employment for the following academic year.

Moreover, as the defendant aptly points out, there is an established procedure for the hiring of new teachers, and this was described in the Peter Dibble affidavit in support of summary judgment. A committee of the Personnel Department narrowed down the pool of applicants for the English teaching job at the AIT to a group of six semi-finalists. This list was further reduced to the top three, and finally an offer was made by the Superintendent of Schools, Anthony L. Marzullo, to the chosen candidate, Eleanor Helgans, an English teacher with thirteen years of experience. The plaintiff's invocation [*12] of the Casey letter and her temporary three- or four-day employment as constituting an implied contract of employment would ignore this competitive procedure and result in the hiring of one who did not compete in the same manner as the other candidates for employment, including the teacher who was finally offered the position.

The motion of the defendant, the Stamford Board of Education, for summary judgment is therefore granted as there are no genuine issues of material fact existing and the defendant is entitled to judgment as a matter of law because the plaintiff did not obtain a written offer of employment with the defendant board from the superintendent of schools as required by law.

So Ordered.

Dated at Stamford, Connecticut, this 13th day of July 2004.

William B. Lewis, Judge Trial Referee