# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEWARD MACHINE COMPANY<br><br>Plaintiff<br><br>v.<br><br>WHITE OAK CORPORATION et al<br><br>Defendants. | 3:00 CV 00834 (SRU) |

**SUPPLEMENT TO EXPERT REPORT**

**OF**

**FRANK R. ZITO, CPA, JD, CFE**

**January 31, 2005**

1

TOFIAS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

Steward Machine Company, Plaintiff v.
White Oak Corporation, et al, Defendants

## Introduction

My name is Frank Zito and I am employed a as Certified Public Accountant at Tofias PC, Cambridge, Massachusetts.

Defendant's (White Oak Corporation, Inc. ("WOC")) counsel has asked me to evaluate a "Second Revised Report" provided by Plaintiff's Expert, Lester Alexander, dated September 2, 2004, which determined damages to Steward Machine Co, Inc. ("SMC" or the "Plaintiff") as a result of the WOC machinery stored at its facility and to review the conclusions contained in my expert report dated October 24, 2003 in light of the current changes made by Mr. Alexander.

## Background

Mr. Alexander's report dated September 2, 2004 is the "Second Revised Report" to his "Initial Report" dated June 2003. The majority of the changes in all three versions of his expert report relate to inclusion or exclusion of certain projects from the population of projects which he ultimately uses to calculate lost efficiency and the damages to the Plaintiff. Multiple changes to the population of projects have occurred across all three of the time periods examined by Mr. Alexander and used to calculate lost efficiency, including: the "Construction Period" (period when WOC was being constructed), "Holding Period" (period when WOC was completed and stored in the shop) and "Lookback Period" (period after WOC was shipped). Mr. Alexander claims that some of his changes are based on new information concerning (1) the period in which the WOC machinery was actually stored inside the Plaintiff's facility during the "Holding Period" and (2) the performance of certain projects, both of which contradict his "First Revised Report". I believe that Mr. Alexander received sufficient information from SMC to draw these same conclusions prior to his "Initial Report" and that his "Second Revised Report" amounts to a "second bite at the apple".

For instance, in his "First Revised Report" Mr. Alexander incorrectly determined the outside storage period (part of the "Holding Period" when the WOC machinery was stored outside, therefore having no effect on plant efficiency) to be from January 1997 through March 1998. In the "Second Revised Report", Mr. Alexander determined that WOC was also stored outside from "November 1, 1999 through August 21, 2000". This implies that the WOC machinery was stored outside from January 1997 through April 1998 and then from November 1999 through its shipment. The resulting outside storage periods are based on information provided by SMC, which Mr. Alexander had in his

possession from inception of his assignment. It was not until I uncovered the uncertainty of the outside storage period in my September 2003 report that the longer outside storage period was incorporated in the "Second Revised Report". These changes in the "Second Revised Report" led to a substantial decrease in damages due to the longer period of outside storage. Further, in order to compensate for the decrease in damage, Mr. Alexander has resorted to changing additional facts that were contained in his "First Revised Report", in an attempt to recoup the decrease in damages. In fact, had sufficient work been completed in the initial review of SMC's records, it is my opinion that changes of this nature would not have been necessary and would have avoided significant time and expense in this litigation.

Specifically, as can be seen in the chart below, each of the revised reports have continually reflected a decrease in the estimate of pre-interest damages. In the "First Revised Report", damages are reduced by 31.6% from the "Initial Report". In the "Second Revised Report", damages are reduced by an additional 23.7% from the "First Revised Report". Therefore, the initially reported damages have been reduced by a total of 47.8%. While, the "Second Revised Report" has addressed a limited number of the issues raised in my expert report, it still fails to address numerous important issues, which I continue to believe are valid; and therefore, renders the resulting conclusions of the "Second Revised Report" invalid.

|  | Plaintiff's Expert Report | | |
|---|---|---|---|
|  | Initial<br>June-03 | 1st Revision<br>September-03 | 2nd Revision<br>September-04 |
| Fabrication Shop | $ 2,498,909 | $ 1,908,712 | $ 1,486,757 |
| Machine Shop | 1,132,471 | 575,112 | 408,794 |
| Total Pre-Interest Damages | $ 3,631,380 | $ 2,483,824 | $ 1,895,551 |

There are three major changes in the "Second Revised Report" when compared to Mr. Alexander's previous report. First, in the "Holding Period", pre-interest damages are reduced by $778,108, which Mr. Alexander attributes to the "Additional White Oak Outside Storage Period: November 1, 1999 through August 21, 2000". As a result of the expanded storage period, Mr. Alexander removes ten projects from the "Holding Period" that he concludes were performed while WOC was stored, outside therefore having no effect on SMC's efficiency. This shifting of projects out of the "Holding Period" results in the decreased damages. Included in the ten projects that were excluded is the Kansas City Southern (K7582) project, which I identified as being intentionally underbid in my previous report and should have been excluded for that reason. This is illustrative of one of many examples of a poor sampling methodology.

Second, with respect to the revised performance of projects, the "Second Revised Report" increases the damages by $139,815, by altering the "estimated labor hours and split of actual fabrication and machine hours" for the Zenith Tech (Z7161) project. Mr. Alexander concludes the estimated hours should be reduced by 5,330 reducing the efficiency on this project.

Actual Hours

|              | Fabrication | Machine | Total  |
|--------------|-------------|---------|--------|
| 1st Revision | 7,951       | 6,342   | 14,293 |
| 2nd Revision | 13,572      | 721     | 14,293 |
| Variance     | 5,621       | (5,621) | -      |

Estimated Hours

|              | Fabrication | Machine | Total  |
|--------------|-------------|---------|--------|
| 1st Revision | 7,621       | 6,079   | 13,700 |
| 2nd Revision | 7,709       | 661     | 8,370  |
| Variance     | 88          | (5,418) | (5,330)|

As this table demonstrates, Mr. Alexander reduced the number of total hours estimated to complete the Zenith Tech (Z7161) project by 39%, making this project appear significantly less efficient than the actual records would indicate. Therefore, Mr. Alexander's conclusion is that damages should be increased. Mr. Alexander relies on management to support this change, which now contradicts both their prior memory of the project and the materials provided to us by SMC, including its own internal financial records. Given this discrepancy, this project should be excluded and the corresponding increase in damages should be eliminated.

Third, the "Second Revised Report" increases damages by $50,020 based on 10 additional revisions to individual projects, one of which, Archer Western (E5929), was identified in my report as being inappropriately included in the "Holding Period". Consistent with my concerns, the "Second Revised Report" has re-classified this project from the "Holding Period" to the "Construction Period". Information to support this re-classification was known from the inception of this assignment. As is typical of the past reports, the source of information used to make these changes was not provided, incomplete or derived from "conversations with project managers", making it difficult to verify.

4

TOFIAS PC

## Analysis

In addition to others flaws, the second revision continues to utilize a study of SMC's operations which is incomplete and based on faulty assumptions. Specifically, it relies in part on (1) a small sample size which is not representative of the entire facility, (2) sampling techniques which are poorly conceived, (3) unreliable records and (4) undocumented comments by project managers. Furthermore, the comparison of bid to actual operating results as a measure of efficiency is questionable, at best. As opposed to a more common and logical comparison, which would review comparable projects and examine their efficiency across time periods. The determination of efficiency used in the "Second Revised Report" relies on bids made by multiple individuals on different kinds of projects and compares the bid to actual performance. The sample, therefore, does not accurately reflect the efficiency achieved by SMC nor does it consider any other potential causes for the loss of efficiency other than the WOC project.

## The Sample Population

The "Second Revised Report", consistent with previous versions, focuses on two SMC production areas, the machine and fabrication shops. It then attempts to segment projects within each shop by size (over 1000 hours and between 100 to 1000 hours). Further, the report ignores all small jobs under 100 hours in determining efficiency. All the reports attempt to place the projects in one of three time periods: the "Construction Period", the "Holding Period" and the "Lookback Period". The "Initial Report" sited specific projects within each of the three time periods and through two subsequent revisions, Mr. Alexander has re-classified numerous projects between periods or eliminated them entirely from the period. Given the extent of all these changes, I am not confident that the sample is yet stable and in any case the sample has become so manipulated, it can not be a reasonable representation of the efficiency of either one of the two SMC shops.

Specifically, the "Second Revised Report" identifies 1,068,718 total production hours (Exhibit 1) in both the machine and fabrication shops for the three periods which are defined in the report. Through a series of adjustments, which are subjective and frequently based on poor records or memories of employees whose interest would be to blame operating inefficiencies on a third party, the report excludes 286,397 hours and ignores an additional 496,318 hours. The result is that damages are estimated based on a study which in aggregate considers only 27% (286,003 hours) of the available 1,068,718 hours. Mr. Alexander has produced a report which does not consider differences among projects and is not representative of the total operation of SMC.

The problem of his limited use of hours in the study is illustrated more dramatically in the separate analysis of the machine and fabrication shops across the "Construction Period", the "Holding Period", and the "Lookback Period" (Exhibit 1). Specifically, in the machine shop, damages are calculated based upon only 22% of all hours available across the three time periods. The report relies on the following for the "Holding Period" and for the "Lookback Period":

- 17% of the available hours during the "Holding Period"; and
- 21% of the available hours during the "Lookback Period".

The result is that the damages in the "Second Revised Report" are calculated in large part by applying the efficiency factor determined by comparing the "Holding Period" to the "Lookback Period", which represents only 17% and 21%, respectively, of the actual work performed during that time. It is my opinion that this is an unreliable measure of efficiency and that any conclusions are invalid due to the faulty methodology.

In the fabrication shop, damages are calculated upon only 37% of all hours available across the three time periods. The report relies on the following for the "Holding Period" and for the "Lookback Period":

- 23% of the available hours during the "Holding Period"; and
- 57% of the available hours during the "Lookback Period".

The result is that the damages in the "Second Revised Report" are calculated in large part by applying the efficiency factor determined by comparing the "Holding Period" to the "Lookback Period", which represents only 23% and 57%, respectively, of the actual work performed during that time. It is my opinion that this is an unreliable measure of efficiency and that any conclusions are invalid due to the faulty methodology.

These statistics highlight the fact that Mr. Alexander's sample does not reflect the overall operation of either the machine or fabrication shop. In general, the major problem with his analysis results from the limited amount of projects considered, the bias used in selecting his sample, and the quality of the data which he relied upon. These flaws manifest themselves in the many changes in Mr. Alexander's inefficiency ratios, highlighted below:

|  | Machine Shop Analysis - 2nd Revision | | | | | |
|---|---|---|---|---|---|---|
|  | Construction Period | | Holding Period | | Lookback Period | |
| **Jobs over 1,000 hours** | | | | | | |
| Actual Hours | 19,777 | 140.2% | 15,899 | 110.7% | 29,190 | 93.5% |
| Estimated Hours | 14,111 | 100.0% | 14,367 | 100.0% | 31,224 | 100.0% |
| Variance | (5,666) | -40.2% | (1,532) | -10.7% | 2,034 | 6.5% |
| **Jobs under 1,000 hours** | | | | | | |
| Actual Hours | 39,533 | 149.9% | 42,694 | 125.3% | 13,740 | 121.6% |
| Estimated Hours | 26,367 | 100.0% | 34,067 | 100.0% | 11,296 | 100.0% |
| Variance | (13,166) | -49.9% | (8,627) | -25.3% | (2,444) | -21.6% |

Lost Efficiency — Initial: 11.6%, 1st Revision: 13.5%, 2nd Revision: 17.2%; 4.9%, 4.9%, 3.7%

The lost efficiency in the "Second Revised Report" for the fabrication shop, as calculated by the Plaintiff's expert, increased by 5.6 percentage points for the jobs over 1000 (11.6% to 17.2%) hours and decreased by 1.2 percentage points for the jobs under 1000 hours (4.9% to 3.7%).

|  | Fabrication Shop Analysis - 2nd Revision | | | | | |
|---|---|---|---|---|---|---|
|  | Construction Period | | Holding Period | | Lookback Period | |
| **Jobs over 1,000 hours** | | | | | | |
| Actual Hours | 26,007 | 126.2% | 36,554 | 121.9% | 47,441 | 83.8% |
| Estimated Hours | 20,602 | 100.0% | 29,994 | 100.0% | 56,589 | 100.0% |
| Variance | (5,405) | -26.2% | (6,560) | -21.9% | 9,148 | 16.2% |
| **Jobs under 1,000 hours** | | | | | | |
| Actual Hours | 6,612 | 117.6% | 4,628 | 177.9% | 3,928 | 112.5% |
| Estimated Hours | 5,622 | 100.0% | 2,601 | 100.0% | 3,493 | 100.0% |
| Variance | (990) | -17.6% | (2,027) | -77.9% | (435) | -12.5% |

Lost Efficiency — Initial: 39.1%, 1st Revision: 39.1%, 2nd Revision: 38.1%; 44.8%, 44.8%, 65.4%

The lost efficiency in the "Second Revised Report" for the machine shop, as calculated by the Plaintiff's expert, decreased by 1 percentage point for the jobs over 1000 hours (39.1% to 38.1%) and increased by 20.6 percentage points for the jobs under 1000 hours (44.8% to 65.4%).

The premise of Mr. Alexander's analysis is that the efficiency from the "Lookback Period" should be representative of the "Holding Period", had the WOC machinery not been stored in SMC's facility. Given the criticisms above, any comparison he makes should not be considered. Additionally, the variety of projects in the shops at any point in time and the fact that most projects have unique characteristics further diminishes the applicability of his efficiency study. This problem is illustrated by the significantly larger

projects in the shops during the "Lookback Period" when compared to projects in all other periods. In fact larger projects are generally more efficient by their nature and therefore, the overall efficiency of the shops in the "Lookback Period" would naturally be higher. A comparison of the "Lookback Period" to the "Holding Period" is unreliable due to the fact the "Holding Period" contained many smaller less efficient projects. An alternative approach is to compare the "Holding Period" to the "Construction Period" due to the similarity in size of the projects performed during these periods. This comparison illustrates that SMC did not lose efficiency in any shop but for the small jobs in the fabrication shop (-17.6% to -77.9%).

### Inclusion/Exclusion of Projects from Study

My initial report discussed numerous cases where projects were inappropriately included or excluded from the study. The same concern with respect to the inclusion/exclusion of projects continues in the "Second Revised Report". Specific examples include the treatment of projects such as Atkinson Dillingham (A7634) and Zenith Tech (Z7161).

Atkinson Dillingham (A7634) represents a project which is included in the "Lookback Period" in the "Second Revised Report" even though the work was not fully completed at SMC's facility. Certain work was completed by a subcontractor and therefore, could not possibly reflect SMC's efficiency in Birmingham. To compound the problem, Mr. Alexander assumes that the project would have achieved an efficiency rate of 15.7% had the work been performed at SMC's fabrication shop. Mr. Alexander notes in footnote 2 to Appendix X that there was "gross inefficiency" at the subcontractor on this project. He provides no rationale for including this project or for including it at a favorable 15.7% efficiency rate while knowing the difficulties experienced by the subcontractor. This is an excellent example of a project that should have been excluded. The practical effect is not material but one has to question the rational for its inclusion in the study. Furthermore, this exclusion would result in a sample set of only five projects, 50% of which are larger than the projects in the "Holding Period" by 100% or more.

Zenith Tech (Z7161) is an example where Mr. Alexander reduced the total estimated hours for this project from 13,700 to 8,370 in the "Holding Period". He did so relying on incomplete records and amounts that were contradictory to internal financial reports of SMC. This action had the effect of reducing overall efficiency, therefore increasing damages. In many other instances where the record was equally unclear, Mr. Alexander chose to exclude the project. However, in this instance he chose to include this project in his study. These examples highlight the lack of reliability in these studies used in all three versions of the reports produced by Mr. Alexander.

### Lack of Consideration of Other Causes of Inefficiency

Not only has Mr. Alexander inappropriately derived efficiency for the reasons above, but he has also compounded that problem by incorrectly attributing 100% of any inefficiency experienced at SMC to WOC.

8

TOFIAS

In my October 2003 report, I identified numerous examples in the SMC records which suggest alternative reasons for inefficiency at the SMC facility. This evidence notwithstanding, each of Mr. Alexander's reports have attributed 100% of the calculated inefficiency to WOC. Mr. Alexander failed to mention let alone consider any other cause for SMC to encounter inefficiency which would reduce or eliminate any of SMC's damages related to WOC. These alternative causes of inefficiency at SMC include:

- Using management's estimates as the basis to calculate an efficiency ratio;
- Late receipt of materials and design approvals;
- Work being performed out of sequence;
- Equipment other than WOC stored at the facility;
- Rework hours and unproductive time.

With all of the work completed by SMC during the time periods studied by Mr. Alexander, it is inconceivable that the above factors or others would not be responsible for some portion if not all of the so called inefficiency sited in the three reports. The three reports completely ignore any of these alternative possibilities.

The "Second Revised Report" continues to include as a component of damages "Other Projects" which remained unidentified. The lost efficiency ratio for "Small Projects" was applied to "Other Projects" without knowing the nature, size, budget or actual results of these projects. The "Second Revised Report" assumes that all of the "Other Projects" were equally affected by WOC as were the "Small Projects" included and identified in the study. These "Other Projects" continue to be unidentified, making any factual verification of Mr. Alexander's assertion impossible. The "Second Revised Report" goes on to apply a series of equally speculative assumptions to arrive at inefficient hours to determine damages for "Other Projects" amounting to $55,489 and $701,798 in the machine and fabrication shops, respectively. This represents a decrease in damages for "Other Projects" by 62.9% and 23.0%, respectively, from the "First Revised Report". Therefore, this component of the asserted damages by the Plaintiff, much like the rest of the "Second Revised Report" is built upon speculative and undocumented assumptions, which in my opinion can not be relied upon.

## Conclusion

The "Second Revised Report" submitted by Mr. Alexander illustrates the same undocumented and incomplete analysis found in his prior two reports rendering yet a third analysis unreliable and invalid. The use of unreliable records, undocumented comments from project managers and the lack of an unbiased sample make his calculation of inefficiency speculative. Coupled with inappropriate selection of projects and a constantly changing set of shop hours chosen by Mr. Alexander, the calculation of efficiency is flawed. Moreover, the comparison of the "Holding Period" to the "Lookback Period" is ill conceived. And further, Mr. Alexander fails to examine any link between the inefficiency at SMC and the multiple factors that could have contributed to the loss of efficiency beyond the stored machinery from WOC. Therefore, the damages calculated in the "Second Revised Report" continue to be overstated, unsupported, and unreliable as was the case in the two prior expert reports submitted by the Plaintiffs.

This report is respectfully submitted, on this 31th day of January, 2005

TOFIAS PC

*[signature]*

Frank R. Zito, Esq., CPA, CFE

*Exhibit 1*

**A.I.G.**
**WHITE OAK CORPORATION**
New Haven Project
Steward Machine
Fabrication and Machine Shop Studies

### Fabrication Shop

| | Construction Period | | Holding Period | | Lookback Period | | Total | |
|---|---|---|---|---|---|---|---|---|
| Total Hours available | 71,117 | 100% | 178,482 | 100% | 90,388 | 100% | 339,987 | 100% |
| Total Hours used | 32,619 | 46% | 41,182 | 23% | 51,369 | 57% | 125,170 | 37% |
| Total Hours considered but not used | 1,865 | 3% | 119,393 | 67% | 191 | 0% | 121,449 | 36% |
| Total Hours not considered and not used | 36,633 | 52% | 17,907 | 10% | 38,828 | 43% | 93,368 | 27% |

### Machine Shop

| | Construction Period | | Holding Period | | Lookback Period | | Total | |
|---|---|---|---|---|---|---|---|---|
| Total Hours available | 181,938 | 100% | 345,190 | 100% | 201,603 | 100% | 728,731 | 100% |
| Total Hours used | 59,310 | 33% | 58,593 | 17% | 42,930 | 21% | 160,833 | 22% |
| Total Hours considered but not used | 28,623 | 16% | 56,838 | 16% | 79,487 | 39% | 164,948 | 23% |
| Total Hours not considered and not used | 94,005 | 52% | 229,759 | 67% | 79,186 | 39% | 402,950 | 55% |

### Fabrication and Machine Shop

| | Construction Period | | Holding Period | | Lookback Period | | Total | |
|---|---|---|---|---|---|---|---|---|
| Total Hours available | 253,055 | 100% | 523,672 | 100% | 291,991 | 100% | 1,068,718 | 100% |
| Total Hours used | 91,929 | 36% | 99,775 | 19% | 94,299 | 32% | 286,003 | 27% |
| Total Hours considered but not used | 30,488 | 12% | 176,231 | 34% | 79,678 | 27% | 286,397 | 27% |
| Total Hours not considered and not used | 130,638 | 52% | 247,666 | 47% | 118,014 | 40% | 496,318 | 46% |

Tofias PC

TOFIAS