THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEWARD MACHINE CO, INC. | : CIVIL ACTION NO. |
| | : |
| V. | : 3:00CV00834(SRU) |
| | : |
| WHITE OAK CORPORATION | : |
| | : |
| AND | : |
| | : |
| NATIONAL UNION FIRE INSURANCE | : |
| COMPANY OF PITTSBURGH, PA. | : February 28, 2005 |

**OPPOSITION OF
STEWARD MACHINE CO. INC.
TO DAUBERT MOTION OF
NATIONAL UNION**

### Introduction

The core issues in this arise out the inability of White Oak in September 1996 to pay for, or accept delivery of, machinery which Steward Machine Co. Inc. ("Steward") specially manufactured for White Oak in accordance with plans and specifications of the State of Connecticut. At the request of White Oak, Steward reluctantly agreed to store and maintain the machinery until White Oak was in a position to accept delivery, which White Oak believed to be a period of 3 months. White Oak agreed to pay for this storage at the rate of $8.00 per square foot per month for inside storage and at the rate of $5.00 per square foot per month for outside storage. White Oak was unable to accept delivery of the machinery at the end of the three months and the storage period stretched into a period of over four years. In addition being unable to accept deliver of the machinery,

White Oak was unable to pay for either the machinery itself or for the storage and maintenance.

The reason Steward was reluctant to store the machinery, even for the 3 month period, was that Steward had no area to store the machinery that was not needed for its ongoing manufacturing operations. As the evidence will show the presence of the White Oak machinery in Steward's plant for four years was the equivalent of having a car blocking an aisle in a parking lot; the presence of that one car adversely impacts the ability of every other car to pass through the lot. It is easy to understand that with every aisle in Steward's plants blocked or narrowed by a piece of the White Oak machinery during at least some portion of what turned out to be a 4 year, as opposed to a 3 month, storage period had an adverse impact on Steward's ongoing manufacturing operations.

In construction cases it is common to measure loss of efficiency caused by the defendant's breach by what is known as the "look back" or "measured mile" methodology. Lauria Brothers & Company v. United States, 369 F. 2d 701 (C. C. Cir. 1966) This method involves comparing the productivity of a particular activity during the period impacted by the defendant's breach with the productivity of the same activity during a comparable period not impacted by the defendant's breach. In approving this methodology the court reiterated the fundamental concept underlying proof of damages where there is no uncertainty as to the fact of damages:

> It is true that there was uncertainty as to the extent of damage, but there was none as to the fact of damage; and there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount uncertainty. The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those

> damages which are definitely attributable to the wrong and only uncertain in respect of their amount.
>
> Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of the fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrong from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damage as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making were different . . .

The court was quoting from Story Parchment Co. v. Patterson Paper Co., 282 U.S. 555, 562—63 (1931) Fifty years later the Connecticut Supreme Court again reiterated the same basic principal of damages:

> [W]e must bear in mind the Code's admonition that remedies should be liberally administered to approximate the benefits that would have flowed from full performance. In recognition of the fact that the plaintiff's difficulty in quantifying his damages often flows directly from the defendant's breach, the philosophy of the Code is to require that degree of proof of damages which the facts permit, but no more.

Bead Chain v. Saxton Products, Inc., 183 Conn. 266, 279 (1981) There is nothing in the gate keeping concept articulated in Daubert v. Merrell Dow Pharmaceauticals, Inc. 509 U. S. 579 (1993) or its progeny that is inconsistent with this long standing basic principal. As this court said in Perkins v. Origin Medasystems Inc. Civ. Action no. 3:99 1403 (January 14, 2004):

> The test of reliability . . . is a flexible one depending on the nature of the issue, the expert's particular expertise, and the subject of testimony. pp. 9-10 (Internal quotation marks omitted)

3

**Nature of the Issue**

The issue in this case is how to measure the impact, if any, of the stored White Oak machinery on the productivity of Steward's other manufacturing and fabrication operations. Steward is what is known as a job shop. Each job that goes through the facility is a different type of job; it could be cone heads for Patriot Missiles, machinery to raise and lower the Tomlinson Bridge, gates for locks on the Ohio River, or pumps for the Everglades Restoration Project. No two jobs are exactly alike. The only thing the jobs have in common is that the same machinery and the same labor force are used for each job. That is the nature of the process of fabricating and manufacturing in a job shop.

Steward, like all such manufacturers, measures efficiency of a particular job in terms of labor hours. The productivity of that process is exclusively a function of the velocity with which a piece of machinery moves through the process. If the process is slowed down, the labor hours devoted to a particular piece of machinery will increase and the process will become less efficient. Since each job is different, the only bench mark for each job is the hours that Steward estimated the job would take when it bid the job. Efficiency, or lack thereof, is measured by comparing the actual labor hours consumed on a particular job with the labor hours that Steward estimated the job would consume.

While the White Oak machinery was stored in the its plant Steward became aware during its weekly production meetings that the actual labor hours the work in process were exceeding historically high amounts The problem Steward was confronted with in this litigation was to find a way to separate out the inefficient labor hours caused by the presence of the White Oak machinery, if any, from the inefficient labor hours that were

4

the result of causes not the responsibility of White Oak. This was the reason Steward retained J. Lester Alexander, III, a nationally recognized expert in financial analysis.

Mr. Alexander's credentials and methodology are set forth in his affidavit which is filed simultaneously herewith. Mr. Alexander's credentials speak for themselves. His methodology is not unlike the "differential diagnosis" method approved by this court in Perkins. The only possible cause present during the "storage period" that was not present during the "lookback period" was the presence of the White Oak machinery. If in fact the presence of the White Oak machinery adversely impacted Steward's efficiency on other jobs during the "lookback period," logic would dictate that the same presence would have also adversely impacted Steward's efficiency on other jobs during the "construction period." The test data confirms Mr. Alexander's methodology. The usefulness or reliability of research or testing programs is almost always a function of the relative size of the numbers tested to the number in the relevant general population. In this case the number of jobs tested is the entire, that is, 100% of the relevant population.

For the foregoing reasons National Union's motion should be denied.

Dated at New Haven, Connecticut, this 28th day of February 2005.

STEWARD MACHINE CO., INC.

By _____
William J. Egan
Barbara E Crowley
Egan & Crowley, P.C.
234 Church Street
New Haven, CT 065510
Tel. (203) 498-8809
Fax (203) 498-8769

5

## **CERTIFICATION**

This is to certify that on this 28th day of February 2005, a copy of the foregoing was hand delivered to:

Gary M. Case
Wolf, Horowitz, Etlinger, & Case, L.L.C.
99 Pratt Street
Hartford, CT 06103

Raymond Garcia
Jane Milas
Frederick Hedberg
Garcia & Milas
44 Trumbull Street
New Haven, CT 06510

William J. Egan