UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEWARD MACHINE COMPANY | : | 3:00 CV 00834 (SRU) |
| PLAINTIFF | : | |
| | : | |
| VS. | : | |
| | | |
| WHITE OAK CORPORATION et al | : | |
| DEFENDANT | : | APRIL 20, 2005 |

**REPLY OF THE DEFENDANTS NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA AND WHITE OAK CORPORATION TO THE POST-TRIAL SUBMISSION OF STEWARD MACHINE COMPANY**

The Defendants National Union Fire Insurance Company of Pittsburgh PA and White Oak Corporation (hereinafter collectively "the Defendants") hereby reply to the post-trial submission of the Steward Machine Company dated April 6, 2005 (hereinafter "Steward"). For the reasons that follow, Steward's post-trial submission is fundamentally flawed on several levels. Steward's recalculation presents – yet again – an inaccurate, misleading and inflated characterization of its "contract balance claim".

The first problem with Steward's approach is that it is contrary to the Court's instructions, and contrary to the undisputed evidence offered at trial. The Court did not instruct the parties to recalculate the invoices to reflect billings which were <u>greater than</u> the percentage amounts actually invoiced by Steward during the course of the project. Indeed, Steward consistently maintained at trial that its invoices to White Oak reflected proper percentages complete, based on the alleged prior approval of the inspectors at the Steward facility. Given this claim, the premise of the recalculation was to re-balance the invoices to reflect an adjusted

contract amount for each item, <u>with the assumption that the percentages reflected in Steward's invoices were accurate and correct.</u>

Not surprisingly, Steward has chosen to deviate from the Court's instructions, and the record, to present a recalculation which is nothing short of fiction. The premise of Steward's recalculation is that its invoices for all of the bid items – and for the entire contract – should be increased to reflect a completion rate of 98% for each item, and 98% for the entire contract. While there are many problems with Steward's approach, the first and most obvious is that Steward never achieved this level of completion and its invoices never reflected this level of completion. The undisputed evidence at trial was that Steward had actually invoiced White Oak based on percentages completion for three of the four bid items which were substantially less than 98%:

| Bid Item | Percentage Completion Reflected in Steward's Invoices |
|---|---|
| Counterweight Sheaves | 100% |
| Counterweight Ropes | 65%[1] |
| Operating Machinery | 68%[2] |
| Lock Machinery | 85%[3] |

---

[1] Steward stipulated that it had invoiced White Oak a total of $947,210 for this item, which was 65% of the total original contract amount of $1,465,000.
[2] Steward stipulated that it had invoiced White Oak a total of $1,155,672 for this item, which was 68% of the White Oak/ConnDOT value of $1,700,000. Steward's final invoice to White Oak for this bid item (Invoice 5343-3, dated April 16, 1997, Defendant's Trial Exhibit 457) stated that this item was 68% complete.
[3] Steward stipulated that it had invoiced White Oak a total of $ 341,700 for this item, which was 85% of the White Oak/ConnDOT value of $400,000. Steward's final invoice to White Oak for this bid item (Invoice 5346-3, dated June 8, 1998, Defendant's Trial Exhibit 532) stated that this item was 85% complete.

Since Steward invoiced White Oak for <u>less than 98% completion</u> of three of the bid items, it makes no sense whatsoever to now recognize adjusted invoices based on this fictional higher completion rate. The absurdity of Steward's claim is evident from its own project documents. Steward's own invoices contradict any suggestion that it achieved 98% completion on these items. Steward premises its 98% completion assumption upon the November 11, 1997 Pennoni Associates inspection report (Defendant's Exhibit 504). Based on this single document, Steward contends that invoices for all four bid items must be increased to reflect 98% completion. However, Steward's last invoice for the Lock Machinery was Invoice 5346-3, and was dated June 8, 1998. <u>See</u> Defendant's Exhibit 532. The invoice (which was the last invoice submitted by Steward to White Oak for this item) states that this item was only "85% complete". Nowhere does this invoice state or suggest that Steward had completed 98% of the Lock Machinery. This invoice was prepared by Steward some 7 months <u>after</u> the November 11, 1997 inspection report. Nothing prevented Steward from invoicing for a greater percentage complete, if in fact Steward had achieved that percentage complete. Steward invoiced for 85% complete on this item because, by its own admission, it had achieved only 85% completion. If Steward had achieved 98% completion on this item (as determined by the inspectors at the Steward plant), this invoice would surely have said as much. Plainly, this 98% completion theory is nothing more than a disingenuous attempt to confuse the issue by citing an incomplete inspection report which was never relied upon by Steward during the actual project itself.

Similarly, Steward's last invoice to White Oak for the Operating Machinery was Invoice 5343-3, dated April 16, 1997. <u>See</u> Defendant's Exhibit 457. This invoice states that this bid item was only "68% complete". Steward submitted no further invoices to White Oak for this

3

item. There is no evidence from which the Court could possibly infer that Steward achieved an additional 30% completion of this item from April 16, 1997 through November 11, 1997 (the date of the Pennoni Associates report). Indeed, such an inference would be contradicted by Steward's own theory of the case – Steward claims that the machinery was in storage, and not being worked on, during this time period. Had Steward done additional work on the Operating Machinery, it would have issued additional invoices for greater amounts. The fact that no additional invoices were issued merely confirms what is obvious – Steward achieved only 68% completion on the Operating Machinery prior to placing the machinery in storage. Any attempt to now claim that this item was 98% complete is pure fiction.

Steward also seeks to adjust its invoices to 98% completion with respect to the Counterweight Ropes. Once again the evidence flatly contradicts any such claim. The November 11, 1997 Pennoni Associates inspection report (Defendant's Exhibit 504) does not even mention or refer to the 128 Main Counterweight Ropes or to the 256 Main Counterweight Rope Sockets, all of which were required of Steward under the Purchase Order. In addition, Steward never invoiced White Oak based on a completion of 98% on the Counterweight Ropes. Prior to December 31, 1996, Steward had invoiced White Oak for $947,210 for this item. This was only 65% of the total value for the item ($1,465,000). Steward submitted no further invoices for this item. The work remaining for this bid item was removed from Steward's subcontract by virtue of the August 24, 2000 Agreement. The total value of the work removed

(based on Steward's own schedule of values) was $ 461,600.[4] Given the substantial amount of work which remained to be done on this item, and the fact that Steward's actual invoices amounted to only 65% of the contract amount, it is implausible that Steward could now claim that these invoices should be adjusted to reflect a substantially higher completion percentage.

The simple and obvious fact is that if Steward had achieved 98% completion for each bid item, it would have invoiced White Oak for 98% completion. Steward's invoices for three of the four bid items never reflected this percentage complete. With respect to the remaining bid item (Counterweight Sheaves) Steward did in fact submit invoices purporting to reflect 100% completion. However, as discussed at length in National Union and White Oak's Trial Briefs and Post-Trial Submissions, Steward never achieved 100% completion for this item. Given the above, any submission which assumes 98% completion for each bid item is misleading and patently untrue.

The misleading nature of Steward's submission is also evident in other respects. In its "Schedule A" and "Schedule A-1", Steward purports to adjust the invoices pursuant to a "Redo Basis". Steward claims that, with respect to its "Schedule A", the "Redo Basis" was "the lower of the total percentage complete determined by DOT, applied to the invoiced bid item only, or the bid item percentage invoiced by Steward." See Steward's Brief at p. 2 (emphasis in original). This statement is patently inaccurate. Upon close examination of Schedule A, it is apparent that Steward utilized this approach only through June 17, 1996. After that date,

---

[4] These values are itemized at page 60 of National Union's Trial Brief, and are confirmed in

5

WOLF, HOROWITZ, ETLINGER, & CASE L.L.C. Counselors At Law
99 Pratt Street, Hartford, Connecticut 06103 *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488

Steward (without explanation) entirely disregards the bid item percentage actually invoiced by Steward, and instead "adjusts" the invoices to reflect the higher percentages reflect in certain inspection reports. The result is that, after June 17, 1996, Steward's Schedule A reflects a series of grossly exaggerated invoices and "adjustments" which can neither be explained nor justified. For example:

- Steward's Invoice 5343-2, with respect to the Operating Machinery, dated November 15, 1996, was in the original amount of $382,285. As of this date, Steward had invoiced White Oak for only 56% completion of the Operating Machinery. However, using a "Redo Basis" of 93%, Steward's Schedule A recalculated this invoice to $955,194.71, <u>nearly three times the original invoice amount.</u> The result is an unjustified increase of 43% completion for this item. While a subsequent invoice (no. 5343-3) is reduced, the reduction is too small to compensate for the prior adjustment. To compound the problem, Steward then adds an additional "Adjustment" of $48,569.22 for this item (applied on June 8, 1998) which is not tied to any particular invoice and further undermines the entire approach. The net result is that Steward's claim for the Operating Machinery is increased to reflect a 98% completion, when in fact the undisputed evidence reflects that Steward had in fact invoiced and completed only 68% of this item.

Defendant's Exhibit 335.

- Steward's Invoice 5346-1, with respect to the Lock Machinery, dated November 15, 1996, was in the original amount of $41,950. As of this date, Steward had invoiced White Oak for only 10% completion of the Lock Machinery. However, using a "Redo Basis" of 93%, Steward's Schedule A recalculated this invoice to $354,269.62, <u>nearly eight times the original invoice amount</u>. The result is an unjustified increase of 83% completion for this item. While two subsequent invoices (nos. 5346-2 and 534603) are reduced, these reductions are too small to compensate for the prior "Adjustment". The net result is that Steward's claim for the Lock Machinery is increased to reflect a 98% completion, when in fact the undisputed evidence reflects that Steward had in fact invoiced and completed only 85% of this item.

- With respect to the Counterweight Ropes, Steward's "Schedule A" includes "Adjustments" reflecting additional charges of $159,992.73 (on November 15, 1996), $11,428.05 (on April 16, 1997) and $17,142.08 (on June 8, 1998). These "Adjustments" do not correspond to any particular invoice or work actually performed by Steward. Indeed, as discussed above, Steward had stopped working on the Counterweight Ropes and never supplied them. The net result is that Steward's claim for the Counterweight Ropes is increased to reflect a 98% completion, when in fact the undisputed evidence reflects that Steward had at most achieved 65% completion for this item.

Finally, Steward's submission should be given no weight by the Court because it is largely based on documents which were never introduced or admitted as exhibits at trial. Steward's Tab 7 and 8 includes copies of various inspection reports and invoices. Most of these documents were not entered as exhibits and are therefore not part of the record.

*Conclusion*

Throughout the trial, Steward claimed that the percentages complete reflected in its invoices for each bid item were justified because they have been approved by the inspectors at Steward's plant. Faced with a recalculation which discloses the true extent of its overbilling, Steward now disingenuously suggests its invoices are no longer accurate and the percentages complete are somehow understated. Steward's approach here is consistent with its approach during the course of the project – exaggerate the claim, ignore the facts, and confuse the issues. As National Union and White Oak demonstrated in their Post Trial Submission, the basic flaw in Steward's invoicing scheme was that Steward's invoices were based on increased contract values, and Steward failed to make the proper adjustments to its invoices to off-set the increased values. Steward has failed to meet its burden of proving that it is entitled to anything on its contract balance claim.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

BY _____
Gary M. Case
Wolf, Horowitz, Etlinger & Case, LLC
99 Pratt Street – Suite 401
Hartford, CT  06103
(860) 724-6667
ct09610


WHITE OAK CORPORATION

BY _____
Jane I. Milas
Garcia & Milas, P.C.
44 Trumbull Street
New Haven, CT  06510
(203) 773-3824
ct01271

## CERTIFICATION

      This is to certify that a true copy of the foregoing document was mailed via first class postage, prepaid, this 20th day of April , 2005 to all counsel of record.

William Egan
Barbara Crowley
Egan & Crowley
234 Church Street
New Haven, CT  06510

Jane Milas
Garcia & Milas
44 Trumbull Street
New Haven, CT  06510

BY _____
             Gary M. Case

57042

WOLF, HOROWITZ, ETLINGER, & CASE L. L. C. Counselors At Law
99 Pratt Street, Hartford, Connecticut 06103 *(860) 724-6667 * Fax (860) 293-1979 * Juris No. 402488